Kurt A. PUTHE, Plaintiff–Appellant,

v.

EXXON SHIPPING CO.,
Defendant–Appellee.

No. 1245, Docket 92–9291.

United States Court of Appeals,
Second Circuit.

Argued March 18, 1993.

Decided Aug. 19, 1993.

James M. Hazen, New York City (Susan P. Mahon, Hill, Betts & Nash, of counsel), for plaintiff-appellant.

Cary R. Wiener, New York City (Todd L. Platek, Kirlin, Campbell, Meadows & Keating, of counsel), for defendant-appellee.

* The Honorable J. Edward Lumbard recused him-

Before: ALTIMARI, Circuit Judge, and LOKEN, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.*

ALTIMARI, Circuit Judge:

Plaintiff-appellant Kurt A. Puthe appeals from a judgment of the United States District Court for the Eastern District of New York (Arthur D. Spatt, *Judge*), dismissing his complaint in its entirety following the grant of summary judgment for defendant-appellee Exxon Shipping Company ("Exxon"). Puthe brought an action pursuant to the Jones Act, 46 U.S.C.App. § 688 (1988), alleging negligence and unseaworthiness on the part of Exxon.

Puthe maintained that after a series of allegedly negligent actions committed by Exxon employees he suffered psychological injuries. These allegedly negligent incidents range from being forced to work in adverse weather conditions to being demoted. Puthe's treating physician concluded that certain of his problems were caused in part by job-related stress.

The district court granted Exxon's motion for summary judgment on a number of grounds. First, the court found that Puthe failed to demonstrate any of the legally cognizable acts of negligence necessary to sustain a cause of action. *See Puthe v. Exxon Shipping Co.*, 802 F.Supp. 819, 828 (E.D.N.Y. 1992). Next, the court stated that plaintiff could not, as a matter of law, establish that any negligent conduct on the part of Exxon caused Puthe's emotional distress. *See id.* at 829. Finally, the court held that Puthe's action was barred by the applicable statutes of limitations. *See id.* at 830.

We affirm the district court's grant of summary judgment based on the court's finding that Puthe failed to demonstrate any legally cognizable acts of negligence.

BACKGROUND

Puthe is a former merchant seaman who was employed by Exxon from 1977 to 1986. During his nine year career as a seaman with Exxon, Puthe made thirty-eight voyages on

self from this case prior to oral argument.

sixteen different vessels. Puthe claims that due to a series of negligent actions by Exxon employees, he suffered various psychological and emotional injuries while serving on several of Exxon's ships. In support of his claim for psychological injuries plaintiff presents the following incidents which he claim "all added up," and caused him great psychological stress:

1. In 1977, while aboard the Exxon Chester, Puthe was ordered to remove a scupper plug on deck during adverse weather conditions and was subsequently knocked down by a wave.

2. In 1978, while aboard the Exxon Philadelphia, Puthe fell on deck and sprained his neck after tripping on lines that collapsed.

3. While in the hospital recovering from the fall Puthe learned that a crewmember of the Exxon New Orleans was killed while working on the ship. Upon his release from the hospital, Puthe was assigned to the Exxon New Orleans. Puthe walked off the ship the same day he signed on because he had a "bad feeling" about working on the ship.

4. In 1980, Puthe claims he sprained his knee aboard the Exxon Florence, but did not want to leave the ship so that he could be home in time for Christmas vacation.

5. In 1981, the master of the Exxon Philadelphia, the ship that Puthe was then assigned to, "throttled up" the ship's engines in heavy seas and adverse weather. He also required the men to work on deck in very cold weather and high winds.

6. In 1981, Puthe was ordered to pull lines on the bow in adverse conditions, was blown around, and observed a fellow crewman get severely injured.

7. In 1982, Puthe was exposed to a sheen of oil in the vessel's water, which caused chloracne.

8. In 1982, Puthe was ordered to work in an overheated pump room. After refusing the order Puthe was threatened with violence. Puthe carried out the order, but burned his hand in the process.

9. In 1983, the captain of a ship that Puthe was sailing on, upon learning of a nearby vessel sinking in a winter storm, delayed seven hours before sending a distress signal. The ship sank and twenty-eight seaman died.

10. In 1984, Puthe sprained his foot on the vessel's mooring lines due to a lip that had never been cut off.

11. Puthe was required to work in areas where he was exposed to asbestos and hydrocarbons.

12. Puthe was demoted in status.

In the summer of 1986 Puthe began to feel extremely depressed. He took his last voyage on August 27, 1986. After leaving Exxon's employ, plaintiff came under the care of Dr. Marguerite Larson. Puthe alleges that during this time he was so depressed and lacking in self-esteem that he began playing Russian roulette with loaded guns. Dr. Larson made a diagnosis of depression and prescribed anti-depressant medication.

In 1987, Puthe saw Dr. Roy Carmen, a gastro-intestinal specialist, regarding his weight loss and rectal bleeding. Dr. Carmen diagnosed his illness as a probable spastic bowel and hemorrhoid disease, suggesting that his illness was related to an "underlying functional and psychological complaint." That same year, Puthe was also examined by Dr. Wren Nealy, an Exxon physician. Dr. Nealy concluded that Puthe was "disabled" and should be restricted to shore duty.

Puthe continued treatment with Dr. Larson through March 22, 1989. Larson's final medical report and diagnosis indicated that Puthe suffered from dysthymia with his work as a stress factor. Another psychiatrist, Dr. Lawrence L. Kaplan, evaluated Puthe and described his condition as an "adjustment disorder with an episode of major depression, precipitated by his experience at Exxon when he became apprehensive and depressed as a result of working under unsafe conditions."

On February 28, 1991, Puthe was examined by psychiatrist Dr. Mortimer F. Shapiro, on behalf of Exxon. Dr. Shapiro strongly disagreed with the diagnosis of Dr. Larson and Dr. Kaplan, and characterized Puthe's personality disorder as classic "Passive Aggressive Personality Disorder." Dr. Shapiro

firmly believed that Puthe's condition was a "built-in" personality disorder.

## PROCEDURAL BACKGROUND

On May 16, 1989, Puthe commenced an action in the United States District Court for the Eastern District of New York (Spatt, *J.*) seeking two million dollars in damages for psychological illness and injuries based on his employment with Exxon. His action was brought pursuant to the Jones Act, 46 U.S.C. app. § 688 (1988), which creates a cause of action for seaman who have been injured in the course of their employment.

On September 26, 1992, the district court granted Exxon's motion for summary judgment. *Puthe v. Exxon Shipping Co.*, 802 F.Supp. 819 (E.D.N.Y.1992). The court found that Puthe had failed to demonstrate a cause of action under the Jones Act based on emotional injuries allegedly suffered as a result of Exxon's negligent conduct. The court found that in order to succeed on such a claim "plaintiff must demonstrate that the defendant's actions amounted to an 'unconscionable abuse' of the plaintiff, causing 'severe emotional distress' resulting in some physical manifestation of the harm." *Id.* at 828. Using that standard, the district court found that Exxon had not subjected Puthe to unconscionable abuse and that Puthe's injuries were not severe. The court added that Puthe could not, as a matter of law, establish that any negligent conduct on the part of Exxon was a cause of his emotional distress. As a separate ground for dismissal, the court ruled that Puthe, as a matter of law, was aware of his psychological injuries and their cause more than three years before he commenced this action. As a result, the court held that the action was barred by the applicable statutes of limitations set forth in 45 U.S.C. § 56 (Federal Employer's Liability Act) and 46 U.S.C.App. § 763a (Uniform Statute of Limitations for Maritime Torts).

Puthe now appeals.

## DISCUSSION

On appeal, Puthe argues that the district court established an incorrect test for determining recovery for emotional injuries under the Jones Act. Under the Jones Act:

> [a]ny seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law ... and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply.

*Id.* § 688(a). Because the Federal Employer's Liability Act, 45 U.S.C. § 51 (1988) ("FELA"), is incorporated by reference in the Jones Act, the analysis of Puthe's claims is guided by the law developed under FELA as well as the Jones Act. FELA provides:

> Every common carrier ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence....

*Id.* Neither the Jones Act nor FELA distinguishes between claims for physical or emotional injury.

The Supreme Court has thus far declined to answer the question of whether a claim for emotional injury is compensable under FELA or the Jones Act. *See Atchison, Topeka & Santa Fe Ry. v. Buell,* 480 U.S. 557, 567, 107 S.Ct. 1410, 1416, 94 L.Ed.2d 563 (1987). In dicta, however, the Court in *Buell* indicated that such a claim may be viable. *See id.* at 568, 107 S.Ct. at 1417. *See also, Gottshall v. Consolidated Rail Corp.,* 988 F.2d 355, 360–71 (3d Cir.1993), *petition for cert. filed,* (U.S. June 9, 1993) (No. 92–1956) (discussing *Buell* in finding that a cause of action for negligent infliction of emotional distress exists under FELA). Although the Court resisted defining standards that would be necessary to make such a claim, *see Buell,* 480 U.S. at 568–69, 107 S.Ct. at 1417, it specifically stated that because FELA jurisprudence is guided by common law developments, recovery "might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity." *Id.* at 568, 107 S.Ct. at 1417.

The district court interpreted references in the Court's decision as requiring "severe emotional injury" and "unconscionable abuse" as prerequisites to recovery for purely emotional injuries. *See Puthe v. Exxon Shipping Co.*, 802 F.Supp. at 828. The Supreme Court's reference to these requirements, however, was made in the context of a discussion of the standards used by most state courts in analyzing claims for *intentional* infliction of emotional distress. *See Buell*, 480 U.S. at 566 n. 13, 107 S.Ct. at 1416 n. 13 (referring to n. 18, which relates to the Court's discussion of the tort of intentional infliction of emotional distress). With regard to claims for negligent infliction of emotional distress, the Court stated only that "although many States have now recognized a tort of *negligent* infliction of emotional distress, they too vary in degree of objective symptomatology the victim must demonstrate." *Id.* at 569–570, 107 S.Ct. at 1418. In concluding its discussion on claims for purely emotional injuries, the Court stated that "[a]s in other areas of law, broad pronouncements in this area may have to bow to the precise application of developing legal principles to the particular facts at hand." *Id.* at 570, 107 S.Ct. at 1418.

Accordingly, we do not read *Buell* as necessarily mandating that the court determine whether the nature and extent of the plaintiff's injury is "severe," and whether such injury was caused by the defendant's "unconscionable abuse." Although we recognize that in limited circumstances a claim for negligent infliction of emotional distress may exist under FELA, we see no need, given the facts of the case before us, to today set the standard for the type of injury or the type of misconduct necessary to present such a claim. Whatever the standards for such a claim may be, a plaintiff cannot recover under any theory of negligence unless his injuries are foreseeable. *See Gallick v. Baltimore & O.R.R.*, 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963) (foreseeability of harm is essential ingredient in FELA negligence); *Scocozza v. Erie R. Co.*, 171 F.2d 745, 746–47 (2d Cir.), *cert. denied*, 337 U.S. 907, 69 S.Ct. 1048, 93 L.Ed. 1719 (1949). *See also, Adams v. CSX Transp., Inc.*, 899 F.2d 536, 539 (6th Cir.1990) (declining to determine whether an emotionally injured plaintiff may recover damages under FELA, but finding that to prevail plaintiff must prove the traditional common law elements of negligence, including foreseeability); *Carlisle v. Consolidated Rail Corp.*, 990 F.2d 90, 97–98 (3rd Cir.1993) (emphasizing whether the injurious result in a claim for negligent infliction of emotional distress under FELA was reasonably foreseeable). We find that Puthe's injuries were clearly not foreseeable.

Puthe has alleged no facts which would lead a reasonable trier of fact to believe that there was a foreseeable risk of emotional injury. Although Exxon had a duty to provide a reasonably safe workplace, *see Bailey v. Central Vermont Ry.*, 319 U.S. 350, 352, 63 S.Ct. 1062, 1062, 87 L.Ed. 1444 (1943), Exxon had no duty to keep Puthe safe from the rigors of a job as a seaman. Puthe's allegations refer to seemingly common occurrences for seamen. It appears obvious to this Court that seamen must expect to encounter certain dangers on the job and to work during adverse weather conditions. They have "knowingly and voluntarily chosen callings which ... involve braving certain hazards and are traditionally not well suited to the squeamish or faint-hearted." *Gaston v. Flowers Transp.*, 866 F.2d 816, 820 (5th Cir. 1989). If seamen were excused from working on deck during high seas and cold winds, the ocean would be filled with crewless boats. In sum, Exxon could not have foreseen that Puthe, who was classified as an able-bodied seaman, would react any differently than other able-bodied seamen to the hardships that mark the job of a seaman working on a vessel in the middle of the ocean.

We note that buried within Puthe's litany of claims is an allegation that he was exposed to asbestos. Puthe, however, does not allege that he suffers emotional distress as a result of fear of the latent effects of the asbestos exposure, a claim that has been accepted by certain courts. *See e.g., Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394, 414 (5th Cir.), *cert. denied*, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986). Rather, Puthe claims that years of being forced to carry out negligent orders culminated in his psychological illness. This type of emotional injury, as

discussed above, was not foreseeable by Exxon. Furthermore, the cases that do recognize claims for emotional distress based on asbestos exposure involve more than the mere conclusory assertion of asbestos exposure that Puthe puts forth in support of his claim. *See, e.g., Deleski v. Raymark Indus., Inc.,* 819 F.2d 377 (3d Cir.1987) (rejecting plaintiff's claim for emotional distress where she alleged no physical injury caused by her exposure to asbestos); *Jackson v. Johns–Manville,* 781 F.2d at 414 (allowing recovery for asbestos exposure where plaintiff's distress was accompanied by a present physical injury); *Landry v. Florida Power & Light Corp.,* 799 F.Supp. 94 (S.D.Fla.1992) (rejecting plaintiff's asbestos claim because he failed to establish a physical injury); *Gerardi v. Nuclear Util. Servs.,* 149 Misc.2d 657, 566 N.Y.S.2d 1002 (N.Y.Sup.Ct.1991) (limiting plaintiff's recovery on asbestos claim to damages for the continuous lifetime monitoring of his health).

Finally, we recognize that also included in Puthe's list of negligent actions are incidents which led to physical injury. Had Puthe brought a claim for negligence alleging physical injuries, this Court might rule differently. If Exxon was negligent in the manner that it monitored the maintenance of its ships, and such negligence, for example, caused Puthe's sprained ankle, we might hold that those injuries were foreseeable. In contrast, however, emotional injuries resulting from nothing more than the accumulation of years of common encounters with the hardships of the sea are clearly not foreseeable.

Because we find that the district court properly dismissed plaintiff's claims on the merits, we need not reach plaintiff's argument that his claim is not time-barred.

## CONCLUSION

For the foregoing reasons, we affirm the opinion of the district court dismissing Puthe's claims for purely emotional injuries.