**Kurt ZEHNER, Jerry Glenn, John Alvarado, et al., individually and on behalf of similarly situated inmates, Plaintiffs–Appellants,**

v.

**Clarence TRIGG, Bruce Brown, John Schilling, et al., Defendants–Appellees.**

No. 97–1251.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 27, 1997.

Decided Dec. 31, 1997.

John Emry (argued), Franklin, IN, for Plaintiffs–Appellants.

Andrew L. Hedges (argued), Office of the Attorney General, Indianapolis, IN, for Defendants–Appellees.

Before CUMMINGS, EASTERBROOK and ROVNER, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiffs consist of offenders who were employed by the Indiana Department of Corrections at the Indiana Youth Center in Plainfield, Indiana. They were assigned to work in the kitchen there. During the two-year period prior to the filing of the complaint, plaintiffs were exposed to asbestos while working in the kitchen. They do not assert physical injuries but claim mental and emotional injuries as a result of the exposure.

Defendant correction officials moved for judgment on the pleadings because plaintiffs did not allege a "physical injury" as required by Section 803(d) of the Prison Litigation Reform Act ("PLRA"), codified as 42 U.S.C. § 1997e(e).

Section 1997e(e) is entitled "Limitation on Recovery" and provides,

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

The district court dismissed the action without prejudice because no plaintiff developed a physical illness caused by the exposure to asbestos and therefore their recovery was barred by § 1997e(e). 952 F.Supp. 1318 (S.D.Ind.1997). We affirm.

## I. Retroactivity of Prison Litigation Reform Act

Plaintiffs contend that the new Section 1997e(e) should not apply to their case, because it was already pending when the PLRA became effective. Although they inexplicably fail to mention it, this Court's deci-

sion in *Abdul–Wadood v. Nathan*, 91 F.3d 1023, 1025 (7th Cir.1996), affords considerable support to the argument.[1] The problem, however, is that plaintiffs failed to present this argument when the district court asked for responses addressing the effect of § 1997e(e) on the case; this failure waived appellate review of the issue. See *Johnson by Johnson v. Duneland Sch. Corp.*, 92 F.3d 554, 557 (7th Cir.1996).

## II. Plaintiffs Have Not Shown the Requisite Physical Injury

■ Section 1997e(e) does not permit recovery for custodial mental or emotional damages "without a prior showing of physical injury." However, plaintiffs are not claiming damages for physical injury, as the district judge pointed out (952 F.Supp. at 1322–1323, 1335). Therefore, they may not recover under Section 1997e(e). *Puthe v. Exxon Shipping Co.*, 2 F.3d 480, 484 (2d Cir.1993); *Ball v. Joy Technologies, Inc.*, 958 F.2d 36, 38–39 (4th Cir.1991).

## III. Constitutionality of the PLRA

■ Before addressing the constitutionality of the PLRA, it should be noted that plaintiffs did not give this Court the requisite notice that they were drawing into question the constitutionality of an Act of Congress, so that our Clerk could certify that fact to the Attorney General of the United States, as required by Rule 44 of the Federal Rules of Appellate Procedure. However, at oral argument the Indiana Deputy Attorney General advised us that he had discussed the case with a representative of the federal Department of Justice. Therefore, we will consider the constitutional question despite this omission. Before proceeding to do so, it should be noted that Indiana's brief consists of passages copied verbatim from the district court's admirable opinion. Such parroting is hardly admirable brief writing.

## A. CONGRESS' POWER TO RESTRICT REMEDIES FOR CONSTITUTIONAL VIOLATIONS

■ The Supreme Court has held that mental and emotional distress can constitute a compensable injury in suits for damages under 42 U.S.C. § 1983 based upon violations of constitutional rights. See *Carey v. Piphus*, 435 U.S. 247, 264, 98 S.Ct. 1042, 1052–1053, 55 L.Ed.2d 252. The statute at issue in this case, however, declares that such a suit cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms. See 42 U.S.C. § 1997e(e). The plaintiffs argue that in enacting the statute, Congress has improperly stripped the federal courts of their power to remedy constitutional violations. The district court, however, held the statute constitutional because it left the courts with power to enforce constitutional guarantees through remedies other than damages. The court's analysis on this point is correct.

The court begins from the premise that "Congress may not effectively nullify the rights guaranteed by the Constitution by prohibiting all remedies for the violation of those rights." 952 F.Supp. at 1329. The premise, however, does not mean that a remedy of damages must be available for every constitutional violation. In the § 1983 context, qualified and absolute immunities for government officials can mean that a given constitutional violation will not have a remedy in damages. Such immunities illustrate how statutory and common law exceptions can permissibly restrict the range of remedies available for certain violations.

■ The district court also mentions Eleventh Amendment immunity as an example showing that not every constitutional violation is compensable by damages. See *id.* This example is inappropriate, however, because the fact that a separate *constitutional* provision (the Eleventh Amendment) may render damages unavailable to remedy constitutional violations is not determinative of the question whether Congress may make such damages unavailable by *statute*.

The district court correctly notes that Congress itself created the § 1983 damages

---

1. See also *Thomas v. Hill*, 963 F.Supp. 753 (N.D.Ind.1997) (holding § 1997e(e) inapplicable to pending cases on basis of *Landgraf v. USI Film* *Prods.*, 511 U.S. 244); *Harris v. Lord*, 957 F.Supp. 471 (S.D.N.Y.1997) (same).

remedy at issue here. The Supreme Court has never held that this remedy is constitutionally required, and it would be odd to conclude that Congress may not take away by statute what it has given by statute. See 952 F.Supp. at 1330. Moreover, Congress enacted § 1983 pursuant to its power under Section 5 of the Fourteenth Amendment to enforce substantive provisions of the Amendment. *Ngiraingas v. Sanchez,* 495 U.S. 182, 187, 110 S.Ct. 1737, 1740–41, 109 L.Ed.2d 163. Section 5 grants Congress broad power to determine how to enforce those provisions, and the courts are circumscribed in their power to interfere. See, e.g., *City of Rome v. United States,* 446 U.S. 156, 176, 100 S.Ct. 1548, 1561, 64 L.Ed.2d 119; *Katzenbach v. Morgan,* 384 U.S. 641, 648–650, 86 S.Ct. 1717, 1722–1723; see also *Missouri v. Jenkins,* 515 U.S. 70, 113, 115 S.Ct. 2038, 2061, 132 L.Ed.2d 63 (O'Connor, J., concurring) (contrasting Congress' broad power under § 5 with courts' limited powers to enforce civil rights).

The plaintiffs rely heavily on *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673. In that case the Court stated that a "damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees." *Id.* at 651, 100 S.Ct. at 1415. The plaintiffs would read this statement to imply that removing the damages remedy renders the vindication of constitutional rights impossible, thereby emasculating the rights themselves. The district court's response to this argument is correct, but it is amplified herein.

In *Owen,* the City of Independence sought to invoke qualified immunity against § 1983 damages based on the fact that its agents allegedly were acting in good faith when they violated the plaintiff's constitutional rights. See *id.* at 624–625, 100 S.Ct. at 1402. The Court rejected the claim of immunity, holding that because damages were an important remedy for constitutional violations, it would not interpret congressional silence as importing such a nontraditional immunity into § 1983. See *id.* at 650–651, 100 S.Ct. at 1415–16. The Court explicitly noted, however, that immunities that were well established when the original version of § 1983 was passed were incorporated into it. See *id.* at 637, 100 S.Ct. at 1408–1409. Moreover, the Court implied that Congress could have granted even the non-traditional immunity the City was seeking, if only it had expressed clearly its intention to do so. See *id.* at 650, 100 S.Ct. at 1415 (refusing to recognize municipal immunity "[a]bsent any clearer indication that Congress intended so to limit the reach of [§ 1983]"). In the present case, Congress' intent to restrict the damages remedy in § 1983 cases could scarcely be more clear. Therefore *Owen* supports the view that § 1997e(e) is a permissible restriction on the availability of damages for constitutional violations.

The district court notes near the conclusion of its discussion on the issue of Congress' power that "[t]here is a point beyond which Congress may not restrict the availability of judicial remedies for the violations of constitutional rights without in essence taking away the rights themselves." 952 F.Supp. at 1331. Because other remedies, such as "injunctive relief backed up with meaningful sanctions for contempt," exist even when damages are not available, "[t]hat point has not been reached by enactment of § 1997e(e) as applied here." *Id.* As a legal conclusion, this point is unassailable. As a practical matter, however, it does not quiet all misgivings about the statute. For the plaintiffs, injunctive relief offers no comfort whatsoever. If they have been poisoned by the defendants' actions, no injunction can stop them from becoming ill. More to the point, no injunction can save them from the fear that they might one day become ill. If these plaintiffs are to be compensated for that fear at all, it must be by damages.

But the legal point remains: the Constitution does not demand an individually effective remedy for every constitutional violation. See *id.* at 1329. If it did, then the immunity of government officials to § 1983 liability would frequently be unconstitutional. If other prisoners are currently being exposed to asbestos within the Indiana prison system, they may seek injunctive relief for the violation. If the plaintiffs in this case develop asbestos-related illnesses, they them-

selves will be able to sue for damages. Because these remedies remain, Congress' decision to restrict the availability of damages is constitutional as applied in this case.

## B.  EQUAL PROTECTION

■ The plaintiffs also challenge § 1997e(e) on the ground that it classifies people in ways that violate the equal protection component of the Fifth Amendment. They reach this conclusion primarily by contending that the statute should be subject to strict scrutiny, rather than the far less demanding rational basis scrutiny accorded to most statutory classifications. A classification receives strict scrutiny if it divides people based upon a suspect criterion, such as race, or if it burdens a fundamental right, such as free speech. See, e.g., *Romer v. Evans*, 517 U.S. 620, ——, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855; *Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 547, 103 S.Ct. 1997, 2001–2002, 76 L.Ed.2d 129. Although the plaintiffs attempt halfheartedly to argue that prisoners are a suspect class, see Appellants' Brief at 15, the idea is completely unsupported, and the district court properly rejected it, see 952 F.Supp. at 1333. The remaining question, therefore, is whether § 1997e(e) burdens a fundamental right.

The plaintiffs argue that the statute impinges upon their fundamental right of access to the courts by effectively denying them a judicial forum for their claims of emotional injury. As the district court points out, however, § 1997e(e) only limits the relief to which the plaintiffs are entitled; it does not restrict their access to the courts to press claims for which the substantive law provides an underpinning. See 952 F.Supp. at 1332. Prisoners still possess what the Supreme Court has said the Constitution requires: "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, ——, 116 S.Ct. 2174, 2180–2181, 135 L.Ed.2d 606. For this reason, the statute is not subject to strict scrutiny, but rather must be upheld if it is rationally related to a legitimate government

purpose. See *Romer*, 517 U.S. at ——, 116 S.Ct. at 1627.

■ Once strict scrutiny is ruled out, the equal protection challenge fails rather quickly. Most of the plaintiffs' arguments criticize the statute for being either overinclusive or underinclusive; under rational basis review, however, the classification need not be the most narrowly tailored means available to achieve the desired end. All that is required to uphold the statute is that Congress rationally perceived a propensity among prisoners to file frivolous lawsuits and reacted to that perception in a reasonable way. The statute need not be the best possible reaction to the perception, nor does the perception itself need to be heavily buttressed by evidentiary support. It is enough that the perceived problem is not obviously implausible and the solution is rationally suited to address that problem. Both propositions are true here, and the statute is therefore constitutional. The district court opinion adequately states the rather apparent connection between a ban on suits based solely on emotional or mental injuries and a concern to constrain frivolous actions.

The Supreme Court recently held that the Federal Employers' Liability Act ("FELA") did not allow a railroad employee to recover for emotional damages from exposure to asbestos in the absence of symptoms of asbestos-related disease. *Metro–North Commuter R.R. v. Buckley*, —— U.S. ——, 117 S.Ct. 2113, 138 L.Ed.2d 560. The restriction § 1997e(e) places on prisoners, therefore, is not even exclusive to them; *Metro–North* authoritatively interprets an Act of Congress to impose the same restriction upon a large group of non-prisoners. This application to another group severely undercuts plaintiffs' argument that § 1997e(e) denies them equal protection.

Plaintiffs attempt to compare § 1997e(e) with the Colorado constitutional provision struck down after a rational basis review in *Romer v. Evans*, 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855. See Appellants' Brief at 30. The provision in *Romer* forbade any state or local government entity to enact any measure to protect or favor gays and lesbians. The Court held that the provision vio-

lated equal protection principles because it "identifie[d] persons by a single trait and then denie[d] them protection across the board." *Id.* at ——, 116 S.Ct. at 1628. It "declar[ed] in general that it shall be more difficult for one group of citizens than for all others to seek aid from the government." *Id.* Section 1997e(e), by contrast, imposes no such across the board restriction on access to governmental assistance. It merely denies to a specific group of people a certain type of remedy for statutory or constitutional harms. This narrow restriction does not raise the same "inevitable inference" of animus as the Colorado provision struck down in *Romer.* See *id.* Congress' stated purpose to limit frivolous lawsuits rationally supports its action in adopting § 1997e(e).

## C. SEPARATION OF POWERS

■ Beginning on page 31 of their Brief, plaintiffs argue that § 1997e(e) violates separation of powers requirements by directing the outcome of constitutional cases in a way forbidden by *United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519. It is unclear whether this argument was advanced below; if it was, the district judge saw fit to ignore it in his written opinion. In any event, the argument is meritless. *Klein* arose from a unique set of facts surrounding presidential pardons issued in the aftermath of the Civil War; it held only that Congress could not, under the guise of generally applicable legislation, "prescribe rules of decision" to control the Court's disposition of an individual case. See *id.* at 146–147. The plaintiffs argue that § 1997e(e) similarly dictates the outcome of the case at hand.

If the argument were accepted, countless federal statutes would be called into question on constitutional grounds. Drawing upon language in *Klein,* the plaintiffs condemn § 1997e(e) because it meant that "the district court ... was called upon to dismiss Zehner's case upon determining the existence of certain facts—the absence of physical injury." Appellants' Brief at 32–33. This argument sweeps far too broadly. Every statute establishing a cause of action requires courts, upon a motion to dismiss, to determine whether certain facts (the prima facie ele-

ments of the cause of action) exist; if the elements are not present, the court must dismiss the case. Yet nobody seriously contends that such statutes unconstitutionally prescribe rules of decision.

## CONCLUSION

Section 1997e(e) is constitutional as applied in this case. It does not nullify the Eighth Amendment by leaving violations of it without remedy. Neither does it violate equal protection principles; it is rationally related to legitimate governmental ends. Finally, the statute does not transgress separation of powers limitations by impermissibly prescribing a rule of decision for constitutional cases.

Judgment affirmed.