Nathaniel JONES–BEY, Plaintiff,

v.

Ed COHN, Herb Newkirk, Chuck Whalan, Stephen Huckins, and Michael Prevasiee, Defendants.

No. 3:98–CV–0484 AS.

United States District Court,
N.D. Indiana,
South Bend Division.

Sept. 8, 2000.

Nathaniel Jones–Bey, pro se.

Janet L. Parsanko, Suzannah B. Wilson, Indiana Atty. General, Indianapolis, IN, for Defendants.

### *MEMORANDUM AND ORDER*

ALLEN SHARP, District Judge.

Nathaniel Jones–Bey filed this *pro se* action pursuant to 42 U.S.C. § 1983, alleging that Indiana Department of Correction ("IDOC") Commissioner Ed Cohn and Maximum Control Facility ("MCF") officials Herb Newkirk, Chuck Whalan, Ste-

phen Huckins and Michael Prevasiee violated his federally protected rights. The court dismissed some of Mr. Jones–Bey's claims at the screening stage pursuant to 28 U.S.C. § 1915A. The defendants filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56, to which Mr. Jones–Bey has responded.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Although the moving party must initially identify the basis for its contention that no genuine issue of material fact exists, the nonmoving party cannot rest on his pleadings, but must produce his own evidence. *Hughes v. Joliet Correctional Ctr.*, 931 F.2d 425, 428 (7th Cir.1991). Rule 56(e) requires that the nonmoving party who bears the burden of proof on an issue for trial allege specific facts showing that there is a genuine issue for trial by his own affidavits or by the depositions, answers to interrogatories, and admissions on file. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553.

... In considering whether any genuine issues of material fact exist, we view the record and extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party. However, the nonmoving party "must do more than simply show that there exists some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Only disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Id. McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298 (7th Cir.1996).

Mr. Jones–Bey alleges that he only receives $15.00 a month in state pay but that all of his money goes to pay filing fees or appellate filing fees assessed pursuant to 28 U.S.C. § 1915(b), and he never actually has money in his prisoner trust account available for other purposes. He alleges that the defendants implemented a policy providing that inmates receiving $15.00 a month are considered not to be indigent for purposes of copying legal materials, mailing materials to the courts and receiving medical care and hygienic necessities, even if he "does not have any money on [the] books."

The defendants' submissions establish that on January 1, 1998, the Indiana Department of Correction implemented Executive Directive 97–53, establishing the procedure to be followed in determining whether prisoners are indigent. The policy provides that a prisoner "who has a Trust Fund Account balance of less than fifteen dollars ($15.00) on the day of the request and has not had a total of more than fifteen ($15.00) credited to the Trust Fund Account in the proceeding thirty (30) days" is not indigent.

Mr. Jones–Bey is a "frequent filer" in this court, and the defendants do not contest his claim that he is making payments on district court or appellate filing fees in five cases pursuant to 28 U.S.C. § 1915(b). The fees for filing multiple civil actions or appeals cumulate. A prisoner who files one suit remits 20% of income to his prison trust account; a suit and an appeal then must commit 40%, and so on. *Newlin v. Helman*, 123 F.3d 429, 436 (7th Cir.1997), *overruled on other grounds, Lee v. Clinton*, 209 F.3d 1025 (7th Cir.2000); *Walker v. O'Brien*, 216 F.3d 626 (7th Cir.2000). Accordingly, by operation of federal law, if he receives $15.00 a month, Mr. Jones–Bey should be paying 100% of his monthly income to the clerk of this court, leaving no monies for other purposes. The defendants assert that under IDOC policy 00–01–102, governing inmate access to the courts, the "payment of such fees takes precedence over all other deductions from the offender's account."

## I.

■ The Prison Litigation Reform Act amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997, to state that "(n)o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Mr. Jones–Bey does not allege that he suffered any physical injury from the defendants' acts. Mr. Jones–Bey seeks injunctive relief and damages, but the complaint does not indicate that he is asking for damages for mental and emotional distress.

The defendants assert that they "are entitled to summary judgment because Plaintiff has not alleged a physical injury." This is the latest manifestation of a theory advanced by some Indiana deputy attorneys general to the effect that § 1997e(e) bars all prisoner cases except those Eighth Amendment cases where a prisoner suffers a serious physical injury.

The defendants cite *Robinson v. Page,* 170 F.3d 747 (7th Cir.1999) and *Zehner v. Trigg,* 133 F.3d 459 (7th Cir.1997), in support of the proposition that they are entitled to summary judgment because Mr. Jones–Bey suffered no physical injury. But *Zehner v. Trigg* notes that a prisoner who may not seek damages for mental suffering because of § 1997e(e) may still seek injunctive and declaratory relief. *Zehner v. Trigg,* 133 F.3d at 462; *see also Harper v. Showers,* 174 F.3d 716, 719 n. 7 (5th Cir.1999); *Davis v. District of Columbia,* 158 F.3d 1342, 1346 (D.C.Cir.1998).

■ Moreover, as noted in *Robinson v. Page,* § 1997e(e) does not always preclude an action for damages where a prisoner has suffered no physical injury. Section 1997e(e) merely limits a prisoner's ability to recover damages for mental and emotional distress, though he may still seek injunctive relief or other forms of damages for any constitutional violation he can prove. Dismissal of an *"entire* complaint" that contains both proper and improper counts "seems to us a weird result that has no support in the language or purpose of the statute." *Robinson v. Page,* 170 F.3d at 749 (emphasis in original).

Mr. Jones–Bey seeks injunctive relief, which is not barred under any theory by § 1997e(e). Under *Robinson v. Page,* he may seek damages on other theories, though he cannot seek damages for other than for mental and emotional distress. If Mr. Jones–Bey were asking for damages for mental or emotional distress, the court would grant summary judgment to the defendants on that claim. The complaint, however, does not indicate that Mr. Jones–Bey is asking for damages for mental and emotional distress.

## II.

■ Mr. Jones–Bey's complaint challenges the policy requiring prisoners to make a co-payment of from $2.00 to $5.00 when they see medical professionals or receive prescriptions and the policy regarding providing hygiene items to prisoners the IDOC does not consider indigent. Mr. Jones–Bey asserts that he cannot afford to pay anything toward his medical care because all of his money goes to pay federal court filing or docketing fees. The defendants assert that they are entitled to judgment on the Eighth Amendment medical care claim because "the policies ensure that offenders will be granted access to medical care regardless of the offender's economic status."

■ A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994); *Wilson v. Seiter,* 501 U.S. 294, 303, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991). In medical care cases, this test is

expressed in terms of whether there was deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Judge Robert L. Miller, Jr., of this court and Judge John Tinder of the United States District Court for the Southern District of Indiana approved the Constitutionality of the IDOC medical access policy in the context of over-the-counter medications because the policy contains a provision that prisoners who are prescribed such medications to treat serious medical needs are to receive them free of cost. *Martin v. DeBruyn,* 880 F.Supp. 610, 613–614 (N.D.Ind.1995), *aff'd* 116 F.3d 1482 (7th Cir.1997); *Hudgins v. DeBruyn,* 922 F.Supp. 144, 151 (S.D.Ind.1996). The IDOC policy regarding co-payment contemplates that prisoners who cannot pay the co-pay are to receive treatment at no cost, though they may have to make the co-payment if they receive money after they received treatment.

INDIANA CODE § 11–10–3–5, dealing with prisoner health co-payment procedures, establishes that IDOC inmates without insurance and unable to pay the full cost for their own health care:

> shall be required to make a co-payment for covered health care services unless:
> a. The offender does not have funds in the Inmate Trust Fund account at the time the service is provided and the offender does not receive funds in the Inmate Trust Fund Account within thirty (30) days after the service is provided;
> b. The service is provided in an emergency;
> c. The service is provided as a result of an injury received while in the custody of the department;
> d. The specific services are provided at the request of the Facility Head or designee.

IND CODE § 11–10–3–5(3) provides that "no offender shall be denied Health Care Services due to a lack of sufficient funds in the Inmate Trust Fund account to make the required co-payment."

█ "Co-pay" policies under which inmates must bear part of the cost of their treatment are Constitutionally permissible if they do not interfere with timely and effective treatment of serious medical needs. *Shapley v. Nevada Bd. of State Prison Comm'rs,* 766 F.2d 404 (9th Cir. 1985); *Johnson v. Dept. of Public Safety and Correctional Services,* 885 F.Supp. 817 (D.Md.1995). The IDOC co-pay policy meets the constitutional tests set forth in these cases and in *Martin v. DeBruyn and Hudgins v. DeBruyn,* in that prisoners are to be provided medical attention even if they do not currently have money in their trust account to make a co-payment. Mr. Jones–Bey cites no specific instances, either in his complaint or in his affidavit, where he was denied medical attention as a result of the policy.

Mr. Jones–Bey alleges in his complaint that the defendants do not provide hygienic necessities such as soap and toothpaste to inmates who they consider not to be indigent but have no money on their accounts. The defendants do not address this claim in their motion for summary judgment, but ¶ 25 of the plaintiff's affidavit establishes that the MCF does provide one hygiene item per week to non indigent inmates without funds on their accounts.

### III.

Mr. Jones–Bey alleges that IDOC policy deprived him of access to the courts on one occasion in February 1998. The defendants assert that their policy does not violate Mr. Jones–Bey's right to access the courts "because an offender's legal correspondence is mailed regardless of the amount of money in the offender's trust account at the time they send it, the policy provides inmates with the necessary financial resources 'to make a meaningful initial presentation of [an inmate's] claims to a trial court.'" They also note that Mr. Jones–Bey was able to file and pursue this case, which he would not have been able to

do if they interpreted the policy as not allowing inmates who are not indigent under the policy to copy legal materials or mail their submissions to the court without first paying copying or postage costs.

■ To establish a violation of the right to access to the courts, an inmate must establish that prison officials failed to provide the assistance required by *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), and show some "quantum of detriment caused by the challenged conduct of state officials ..." *Jenkins v. Lane*, 977 F.2d 266, 269 (7th Cir.1992), *citing Shango v. Jurich*, 965 F.2d 289, 293 (7th Cir.1992). The Supreme Court approved this approach in *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996) (holding that *Bounds v. Smith* did not eliminate the actual-injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the courts). The actual-injury requirement applies even in cases "involving substantial systematic deprivation of access to court," including the "total denial of access to a library," or "an *absolute* deprivation of access to all legal materials" *Lewis v. Casey*, 518 U.S. at 353 n. 4, 116 S.Ct. at 2181 (emphasis in original). Standing alone, delay and inconvenience do not rise to the level of a constitutional deficiency. *Campbell v. Miller*, 787 F.2d 217, 229 (7th Cir. 1986), *cert. denied* 479 U.S. 1019, 107 S.Ct. 673, 93 L.Ed.2d 724 (1986).

IDOC Policy 00–01–102 deals with inmate access to the courts. The defendants submitted a copy of this policy as an attachment to their summary judgment motion. The policy is silent on the effect of an inmate's indigence on postage costs. The portion of the policy dealing with legal correspondence, states that "non-indigent offenders may obtain sufficient materials for legal correspondence at their own expense. Indigent offenders shall be provided stationery and postage for legal correspondence." The section dealing with materials and supplies, states that "offenders shall be responsible for the cost of making copies ... an offender who is indigent shall be allowed to obtain a[sic] copies of legal materials free of charge."

The affidavit of Westville Correctional Facility[1] Account Clerk Jacqueline Shrader states that in February 1998, Mr. Jones–Bey was not indigent under IDOC policy because the credits to his account in the preceding thirty days exceeded $15.00. She suggests, without stating the basis for her knowledge,[2] that Mr. Jones–Bey "did not request any legal mail be sent on February 13, 1998." She further states that "legal mail is sent regardless of whether an offender pays for postage. Therefore, Jones–Bey's legal mail would have been sent regardless of his account balance."

In his own affidavit, Mr. Jones–Bey states that in early 1998, he was attempting to appeal the denial of a habeas corpus petition, *Nathaniel Jones–Bey v. Herb Newkirk*, Appellate Cause Number 97–4219. He says that on February 13, 1998, he attempted to have legal documents sent to the court, but that defendant Huckins "refused to send out plaintiff's legal mail" because he was not indigent and had no money left in his account to pay for postage. He asserts that the Seventh Circuit dismissed the appeal.

■ The question before the court is how MCF officials construed the IDOC policy regarding copying and mailing costs for legal materials. The policy itself is silent as to postage for mailing to the court and states that inmates found not to be

---

1. Although Jacqueline Shrader is employed at the Westville Correctional Facility, she states that she is also responsible for overseeing inmate accounts at the MCF.

2. Ms. Shrader does not state that she had any direct involvement in handling outgoing inmate legal mail at the MCF currently or in 1998, and her affidavit does not establish how she would know whether Mr. Jones–Bey requested MCF officials to send legal mail on any given date. MCF Counselor Stephen Huckins, who the plaintiff alleges is the person who mishandled his legal mail on this occasion, submitted no affidavit.

indigent will be required to pay copying costs. The defendants suggest that the MCF treated legal mail and legal copying generally the same as co-payments for medical treatment—providing the service without payment where the inmate currently has no money in his account.[3] If so, then the policy does everything the Constitution requires.

But the policy does not state that officials will provide postage and waive copying costs where an inmate they do not consider indigent currently has no money in his account, and the defendants' submissions do not establish that this is how MCF officials were implementing the policy in 1998. Westville Correctional Facility Account Clerk Jacqueline Shrader states in her affidavit that "legal mail is sent regardless of whether an offender pays for postage. Therefore, Jones–Bey's legal mail would have been sent regardless of his account balance." But Ms. Shrader is not a MCF official and does not state that she has any responsibility for carrying out the copying and postage policies at the MCF either now or in February 1998. The only defendant who submitted an affidavit was Mike Prevasiee, and his affidavit merely authenticated copies of various policy directives and other materials submitted to the court.

The defendants' second argument is that Mr. Jones–Bey was able to file and pursue this case, which he could not have done if the policy was interpreted as not allowing inmates who are not indigent under the policy to copy legal materials or mail their submissions to the court without first paying copying or postage costs. The court notes that Mr. Jones–Bey has mailed many submissions to the court in this case, and in other cases pending before this court, while paying 100% of his income toward filing fees pursuant to § 1915(b). This supports the defendants' claim that they have interpreted the policy as allowing inmates who are not indigent under

IDOC policy to copy and send materials to the court either waiving costs entirely or allowing inmates to pay on some sort of deferred payment plan. Moreover, Mr. Jones–Bey does not allege that he was denied leave to mail materials to the court on any occasion except February 13, 1998.

■ Accordingly, the court concludes that the record, taken as a whole, supports the proposition that the policy itself does not deprive inmates who the IDOC does not consider indigent but actually have no money on their accounts of access to the courts. If the policy itself does not deprive inmates of access to the courts, the only question remaining before the court is whether, in February 1998, defendant Huckins injured Mr. Jones–Bey by refusing to mail a submission to the court in *Nathaniel Jones–Bey v. Herb Newkirk,* Appellate Cause Number 97–4219.

■ Counselor Huckins is the only defendant Mr. Jones–Bey asserts was personally involved in the alleged refusal to mail a submission to the court in *Nathaniel Jones–Bey v. Herb Newkirk.* A person cannot be held liable for damages under § 1983 unless he was personally involved in the alleged wrongdoing. *Starzenski v. City of Elkhart,* 87 F.3d 872, 879 (7th Cir.1996), *cert. denied,* 519 U.S. 1055, 117 S.Ct. 683, 136 L.Ed.2d 608 (1997). The doctrine of *respondeat superior,* which allows a superior to be held liable for a subordinate's actions in some cases, has no application to § 1983 actions. *Moore v. State of Indiana,* 999 F.2d 1125, 1129 (7th Cir.1993).

■ *Nathaniel Jones–Bey v. Herb Newkirk,* 3:96cv720 AS, originated in this court, and the court will take judicial notice of its own records in 3:96cv720 AS. These records establish that this court dismissed the petition without prejudice because it was a successive petition and the

---

**3.** As a practical matter, so long as Mr. Jones–Bey is paying on five *in forma pauperis* orders pursuant to § 1915(b), no money would ever remain in his account long enough to be used

for copying costs because he should be paying 100% of his monthly income to the clerk of this court, leaving no monies for other purposes.

United States Court of Appeals for the Seventh Circuit had not granted Mr. Jones–Bey leave to file a successive petition. This court does not have the complete record of filings in the Seventh Circuit, but the records available to the court establish that the appeal was dismissed on May 18, 1998, for "failure to timely pay the required docketing fee, pursuant to Circuit Rule 3(b)." If Mr. Jones–Bey was thwarted in an attempt to file a petition to proceed *in forma pauperis,* the granting of which would have prevented the dismissal of his appeal, then this court cannot say for certain on the record before it that he suffered no actual harm as a result of Mr. Huckins allegedly refusing to mail a submission to the court in *Nathaniel Jones–Bey v. Herb Newkirk.*

### IV.

Mr. Jones–Bey's complaint invoked the court's pendent jurisdiction to bring state law tort claims against the defendants. Pendent jurisdiction has been codified in 28 U.S.C. § 1367, which provides that, unless provided otherwise by statute, federal courts "have supplemental jurisdiction over all other claims that are so related to claims in the action … that they form part of the same case or controversy."

When it reviewed the complaint pursuant to § 1915A, this court concluded that "because Mr. Jones–Bey may bring pendent state law tort claims against the defendant state employees, provided he has met the procedural prerequisites established by state statute to bring such claims, these claims are not subject to dismissal at the screening stage." The defendants did not address Mr. Jones–Bey's supplemental state law claims in their summary judgment motion.

### V.

For the foregoing reasons, the court **GRANTS** the defendants' motion for summary judgment [docket entry # 46] in part and **DENIES** it in part. The court **GRANTS** summary judgment to the defendants on the Eighth Amendment claims presented in the complaint, **GRANTS**

them summary judgment on the injunctive relief claims, and **GRANTS** summary judgment to defendants Ed Cohn, Herb Newkirk, Chuck Whalan, and Michael Prevasiee on the remaining claims. The court **DENIES** the request for summary judgment on the part of defendant Stephen Huckins on the claim that he refused to mail a submission to the court in *Nathaniel Jones–Bey v. Herb Newkirk* on February 13, 1998, and **DENIES** summary judgment to defendant Huckins on the plaintiff's supplemental state law claims.

**IT IS SO ORDERED.**