James W. **KERR**, Plaintiff–Appellant,

v.

Steven **PUCKETT**, et al., Defendants–Appellees.

No. 97–2566.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 17, 1998.

Decided March 10, 1998.

**322**

Timothy Alan Provis (argued), Madison, WI, for Plaintiff–Appellant.

Michael J. Losse, Leonard Martin (argued), Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, for Defendants–Appellees.

Before CUMMINGS, CUDAHY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

James Kerr participated in several programs designed to reduce prisoners' dependence on drugs and alcohol. Some programs' religious components offended Kerr and led to *Kerr v. Farrey,* 95 F.3d 472, 476–80 (7th Cir.1996), which holds that a prison violates the establishment clause of the first amendment by making benefits such as parole contingent on receiving religious instruction and professing religious faith. But we added that the novelty of applying this principle to self-improvement programs in prison precludes an award of damages; public officials have qualified immunity unless clearly established law would have alerted them to the constitutional flaw. *Id.* at 480–81. Kerr tried other programs that used non-religious forms of behavior modification; he filed a second suit (this one) complaining that "brainwashing" violates his constitutional rights. Following *Farrey,* the district court held that these defendants, too, have immunity from damages liability. 967 F.Supp. 354 (E.D.Wis. 1997). Because Kerr has been released on parole, *id.* at 356, damages are the only potential remedy, and he therefore lost outright.

The district court relied on 42 U.S.C. § 1997e(e) in addition to qualified immunity. This portion of the Prison Litigation Reform Act provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Kerr brought the suit after he had been released on parole and was therefore no longer "confined in a jail, prison, or other correctional facility". Nonetheless the district court applied this statute, because "common sense and the overall purposes of the PLRA favor application of § 1997e(e) to actions brought by former prisoners." 967 F.Supp. at 362, quoting from *Zehner v. Trigg,* 952 F.Supp. 1318, 1325 (S.D.Ind.), affirmed on other grounds, 133 F.3d 459 (7th Cir.1997). What sense would it make, the judge wondered, to say that a person may

not recover damages for mental injuries while he remained in prison, but may seek that remedy the day after release?

 "Common sense" is a treacherous guide to statutory interpretation. One person's "common sense" is another's bête noire. Statutes are compromises among legislators who may hold incompatible conceptions of the public weal. Some legislators opposed the PLRA outright; others wanted more sweeping restrictions on prisoners' litigation; the actual statute satisfied few completely. Instead of relying on "common sense", which is an invitation to treat the law as if one side or the other had its way, a court should implement the language actually enacted—provided the statute is not internally inconsistent or otherwise absurd. E.g., *Salinas v. United States*, — U.S. —, — — —, 118 S.Ct. 469, 473–74, 139 L.Ed.2d 352 (1997); *Felker v. Turpin*, 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). Section 1997e(e) as enacted is self-consistent and simple to understand. A "prisoner" cannot bring an action for mental injury unless he has suffered physical injury too. Just in case anyone might be tempted to equate "prisoner" with "ex-prisoner"—to think that "prisoner" refers to the plaintiff's status at the time of the injury rather than at the time the litigation begins, cf. *Robinson v. Shell Oil Co.*, — U.S. —, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)—the statute says that its object is a "prisoner *confined in* a jail, prison, or other correctional facility" (emphasis added). Then there is an explicit definition in § 1997e(h):

> As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

The statutory language does not leave wriggle room; a convict out on parole is not a "person incarcerated or detained in any facility who is ... adjudicated delinquent for, violations of ... the terms and conditions of parole". Most sections of the PLRA use the term "prisoner", and we held in *Robbins v. Switzer*, 104 F.3d 895 (7th Cir.1997), that in

28 U.S.C. § 1915(b) this term does not comprehend a felon who has been released. § 1997e(h) shows that the same reading is right for § 1997e. So by waiting until his release from prison Kerr avoided § 1997e(e). Cf. *Abdul–Wadood v. Nathan*, 91 F.3d 1023 (7th Cir.1996) (holding with respect to another part of the PLRA that the court must determine the prisoner's status on the date the suit or appeal is "brought" rather than at some other time). And a distinction between current and former prisoners makes a modicum of sense: Congress deemed prisoners to be pestiferous litigants because they have so much free time on their hands and there are few costs to filing suit. Opportunity costs of litigation rise following release, diminishing the need for special precautions against weak suits. Because § 1997e(e) does not apply by its terms, we need not consider whether the approach of *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), coupled with the lack of any textual indication that the statute affects damages available for events predating its enactment, likewise would preclude its application to Kerr.

 As for immunity: Kerr's arguments largely rehash contentions resolved against him already. He contends that religion's role in some programs entitles him to damages. We see no reason to revisit *Farrey*. Neither the Supreme Court nor any other court of appeals has criticized that opinion's handling of the immunity issue. But, according to Kerr, "brainwashing" is different from religious indoctrination. The eighth amendment establishes that inhumane punishment is unconstitutional, so the right in question was definitively established long ago. This position depends on stating the right at such an high level of generality that it becomes a truism. That is not what *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), instructs courts to do. We must determine whether the generalities of the Constitution have been made concrete, so that officeholders can understand the limits on their conduct. No court has ever held that "brainwashing" of prisoners as part of substance-abuse-control programs violates the eighth amendment (or any other part of

the Constitution). Prison officials needn't predict the outcome of cases yet to be brought. And the lack of precedent is not because these programs are so plainly unconstitutional that no one has ever needed to litigate the point before. See *K.H. v. Morgan*, 914 F.2d 846, 851 (7th Cir.1990). Kerr's brief narrates the features of the programs to which he most objects:

All of the prison drug rehabilitation programs administered by the Wisconsin prison system contain "criminal thinking" portions. The purpose of the "criminal thinking" portions of the programs Mr. KERR was assigned to was to change the participants' "attitudes, values, beliefs and thinking patterns." One of the attitudes Mr. KERR was required to change by these programs was his belief in his Fourth Amendment rights.

The tactics used by the prison officials to change Mr. KERR's attitudes included:

a) He was required to write and then read publicly to the program group confessions of his alleged "criminal thinking errors."

b) He was required to write an autobiography which was then used against him by the social workers running the program.

c) He and others in the program were required to inform on each other five times a day about violating rules.

d) The social workers in the program used intimidation by screaming at Mr[.] KERR at length.

e) Mr. KERR was punished for a "criminal thinking error" by being required to scrub walls with a toothbrush for hours.

Mr. KERR was required to participate in the prison drug rehabilitation programs in order to secure the earliest possible parole.

App. Br. 4–5 (citations to record omitted). Elements of this kind are common to Alcoholics Anonymous, military basic training, and the "boot camp" programs that many prisons think offer prospects of rehabilitation. Perhaps it is unrealistic to suppose that prisoners' "criminal thinking" rather than other elements of their background or opportunities influence the recidivism rate; perhaps prison officials overstate the extent to which these programs affect the likelihood of "criminal thinking." Congress abandoned "rehabilitation" as a justification of imprisonment when it enacted the Sentencing Reform Act of 1984. See 18 U.S.C. § 3582(a), 28 U.S.C. § 994(t). But states are free to approach matters otherwise, and to seek rehabilitation even if that entails programs that prisoners find unpleasant. Recall the text of the thirteenth amendment: "Neither slavery nor involuntary servitude, *except as a punishment for crime whereof the party shall have been duly convicted*, shall exist within the United States, or any place subject to their jurisdiction." Putting prisoners to work against their will, even scrubbing walls with toothbrushes, is hard to describe as a violation of the Constitution.

Many prisoners, of whom Kerr apparently was one, leap at the chance to get out early by participating in substance-abuse-control programs. They learn that there is no gain without pain. Imprisonment is not a kind way to produce either rehabilitation or specific deterrence; "tough love" may be the best medicine. Breaking rocks or other hard labor is a lot worse than the programs Wisconsin uses. If imprisonment at hard labor is constitutional (and not even *Weems v. United States*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910), doubts this), then it is impossible to say that the programs Kerr describes, which offer prisoners an opportunity to advance the date of their freedom in exchange for a few uncomfortable hours, violate the eighth amendment. These programs did not "clearly" violate the eighth amendment at the time Kerr was in prison, because they do not violate the eighth amendment even today. See *Siegert v. Gilley*, 500 U.S. 226, 232–33, 111 S.Ct. 1789, 1793–94, 114 L.Ed.2d 277 (1991).

AFFIRMED.