Frederick Lamar HARRIS, Danny Chadwick, et al., Plaintiffs-Appellants,

v.

Wayne GARNER, Commissioner of the Georgia Department of Corrections, A.G. Thomas, Director of Facilities Division of the Georgia Department of Corrections, et al., Defendants-Appellees.

No. 98-8899.

United States Court of Appeals,

Eleventh Circuit.

Sept. 30, 1999.

Appeal from the United States District Court for the Middle District of Georgia. (No. 5:97-CV-79-4 (HL), Hugh Lawson, Judge.

Before TJOFLAT and BIRCH, Circuit Judges, and BRIGHT[*], Senior Circuit Judge.

TJOFLAT, Circuit Judge:

In this case the parties ask us to answer several important questions relating to two provisions of the Prison Litigation Reform Act of 1995, Pub.L. No. 104-134, 110 Stat. 1321 (1996) (codified in scattered sections of 42 U.S.C.) ("PLRA"). 42 U.S.C. § 1997e(a) (Supp. II 1996) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(e) (Supp. II 1996) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

Today, we address (1) whether section 1997e(e) applies to former prisoners who file a claim for injuries suffered while in custody, after they have been released from incarceration; (2) whether section 1997e(a) requires prisoners to exhaust all administrative remedies before they bring a federal law action with respect to prison conditions, even if it would be futile for the prisoner to seek such administrative remedies, and even though the administrative remedies are inadequate; (3) what level of injury must be sustained for

[*]Honorable Myron H. Bright, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

a prisoner to meet the section 1997e(e) requirement that the prisoner must make a "prior showing of physical injury" before filing suit for "mental or emotion injury suffered while in custody;" and (4) the constitutionality of section 1997e(e).

I.

Eleven prisoners brought this civil rights suit for damages and injunctive relief[1] in the United States District Court for the Middle District of Georgia against employees of the Georgia Department of Corrections ("GDC").[2] The plaintiffs alleged violations of the their Fourth, Eighth, and Fourteenth Amendment rights as a result of actions allegedly taken by the defendants during a "shakedown" at Georgia's Dooly State Prison facility.[3] According to the plaintiffs, members of a special prison "Tactical Squad," led by Commissioner Wayne Garner of the GDC, stormed the prison facility on October 23, 1996. The squad officers ordered prisoners to strip naked, and performed body cavity searches while members of the opposite sex were present;[4] physically harassed some prisoners; ordered one inmate to "dry shave;"[5] made harassing comments to an inmate because of his perceived sexual orientation; and ordered one prisoner to "tap dance" while

---

[1]Plaintiffs' complaint alleges violations of plaintiffs' Fourth, Eighth, and Fourteenth Amendment rights under the United States Constitution, but cites no statutory authority for the relief they seek; presumably they sought relief under 42 U.S.C. § 1983 (1994 & Supp. II 1996): "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law...."

[2]The complaint was filed against "Wayne Garner, Commissioner of the Georgia Department of Corrections; A.G. Thomas, Director of Facilities Division of the Georgia Department of Corrections; Duke Blackburn, Executive Assistant, Special Operations of the Georgia Department of Corrections; and Twenty-Two Unnamed Tactical Squad Officers of the Georgia Department of Corrections, in their individual and official capacities."

[3]In this context, a prison "shakedown" is a systematic search of a correctional institution wherein prison officials search for illegal drugs and other contraband by means of body cavity searches, searches of inmates' living quarters, and searches of other areas of the institution.

[4]Georgia's Dooly State Prison is an all male correctional facility that employs female staff members.

[5]"Dry shaving" refers to the practice of shaving with an unlubricated razor.

2

naked.

The district court referred the case to a magistrate judge in accordance with 28 U.S.C. § 636 (1994). On February 4, 1998, before the magistrate judge had issued his recommendation in the case, six plaintiffs, who had been released from custody, moved the court for leave to withdraw their claims for injunctive relief, because their release had mooted such claims. *See Tucker v. Phyfer,* 819 F.2d 1030, 1033 (11th Cir.1987). In his recommendation to the district court, the magistrate judge treated the complaint as amended in accordance with the plaintiffs' motion.

After receiving the magistrate judge's recommendation, the district court divided the plaintiffs into four classes according to their different factual circumstances, and issued a ruling particular to each class as follows:

First, the court found that plaintiffs Danny Chadwick, Frederick Harris, Lenois Cook, Willie Hooks, Farrell Nation, and William Dailey had been released from the GDC. As such, their claims for injunctive relief were moot. The court also granted defendants' 12(b)(6) motion and dismissed with prejudice these plaintiffs' claims for compensatory and punitive damages because they did not allege any physical injury. The court thus reasoned that the claims were barred by section 1997e(e)'s physical injury requirement. The magistrate judge's recommendation, adopted with only slight modification by the district court, expressly relied on the holding that " § 1997e(e) is applicable to the claims of prisoners who have been released."

Second, the district court dismissed without prejudice the claims of plaintiffs Samuel Locklear, Alan Kilgore, and Leroy Langes because these plaintiffs had not yet exhausted all of their administrative remedies and thus had not satisfied the exhaustion requirement of section 1997e(a). The court also found that these plaintiffs' claims for compensatory and punitive damages were barred by section 1997e(e) because they did not allege the requisite physical injury.

Third, the court dismissed without prejudice the claims of plaintiff Dayton Brinkley because he had not yet exhausted all of his administrative remedies and had thus not satisfied section 1997e(a). The court

3

also found that Brinkley's claims for compensatory and punitive damages were not barred by section 1997e(e) because he alleged the requisite physical injury. Before he could submit any claims to a court, however, Brinkley would have to exhaust his administrative remedies.

Finally, the court granted defendants' 12(b)(6) motion and dismissed with prejudice plaintiff James Wade's claims for compensatory and punitive damages because even though Wade was still in prison and had exhausted all of his administrative remedies, his allegations of physical injury were not serious enough to satisfy the physical injury requirement of section 1997e(e). Accordingly, the claims were barred. The court did not address Wade's claims for injunctive and declaratory relief.

Plaintiffs timely appealed.

## II.

We review de novo the district court's dismissal of a complaint for failure to state a claim upon which relief could be granted. *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 948 (11th Cir.1997). When considering a Rule 12(b)(6) motion to dismiss, a court must accept the allegations in the complaint as true, construing them in the light most favorable to the plaintiffs. *See Roberts v. Florida Power & Light Co.,* 146 F.3d 1305, 1307 (11th Cir.1998), *cert. denied,* --- U.S. ----, 119 S.Ct. 1027, 143 L.Ed.2d 38 (1999). We have done so in setting out the facts, above. A Rule 12(b)(6) motion to dismiss should be granted only if it appears beyond doubt that the plaintiffs can prove no set of facts in support of their allegations which would entitle them to relief. *See id.*

We also review de novo dismissals for failure to exhaust administrative remedies under section 1997e(a). *See Alexander v. Hawk,* 159 F.3d 1321, 1323 (11th Cir.1998).

## III.

## A.

The district court treated the complaint as amended for the six plaintiffs who were released from the GDC before the magistrate judge issued his report and recommendation, and thus correctly dismissed those

plaintiffs' claims for injunctive relief as moot. *See Tucker,* 819 F.2d at 1033 ("If the plaintiff's claim is not live, the court lacks a justiciable controversy and must dismiss the claim as moot."). Relying in part on *Zehner v. Trigg,* 952 F.Supp. 1318, 1323-27 (S.D.Ind.1997), the district court also held that " § 1997e(e) is applicable to the claims of prisoners who have been released" and thus dismissed with prejudice the released prisoners' claims to compensatory and punitive damages because of a failure to allege physical injury. We find that the district court erred with regard to its section 1997e(e) holding.

First, let us be clear that at the point at which the district court treated the released prisoners' complaint as amended, those six plaintiffs became *former prisoners* who had filed a complaint for monetary damages against employees of the GDC for injuries suffered while in custody.

As noted above, 42 U.S.C. § 1997e(e) provides: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Section 1997e(h) defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h) (Supp. II 1996). According to the plain language of the statute, section 1997e(e) does not apply to former prisoners, or those who have been released from a correctional facility, because such persons are clearly not "confined in a jail, prison, or other correctional facility," or "incarcerated or detained in any facility." The statute could not be more plain: it applies to those who (a) seek a civil remedy for mental or emotional injury suffered while in custody, and (b) seek such a remedy while they are incarcerated. As the Seventh Circuit has noted in analyzing section 1997e(e), "[t]he statutory language does not leave wriggle room." *Kerr v. Puckett,* 138 F.3d 321, 323 (7th Cir.1998). It does not apply to persons who have never been prisoners; nor does it apply to former prisoners who seek civil relief for injuries suffered while they were prisoners.

Defendants argue that Congress' purpose in enacting the PLRA was to curtail frivolous prisoner

5

litigation, and that reading the statute to bar certain claims by current but not former prisoners is not faithful to congressional intent because, under our interpretation today, some claims "for mental or emotional injury suffered while in custody" can be brought "without a prior showing of physical injury." Further, defendants see little sense in discriminating between prisoners who bring suit while they are incarcerated, and former prisoners who seek relief on the same day they are released.

Absent mistake or absurdity, we implement the statutory language as enacted. *Salinas v. United States,* 522 U.S. 52, 57-58, 118 S.Ct. 469, 473-74, 139 L.Ed.2d 352 (1997). Here, the language of section 1997e(e) could not be clearer. And contrary to defendants' congressional intent argument, Congress manifestly wanted to draw a bright line distinction between those who *are* prisoners, and those who are *not* prisoners. *See* 141 Cong. Rec. S7524-26 (daily ed. May 25, 1995) (statements by Senators Dole and Kyl) (prisoners have a unique incentive to file frivolous lawsuits because litigation "has become a recreational activity for long-term residents of our prisons," because prisoners "have little to lose and everything to gain," and because filing frivolous complaints is "a means of gaining a short sabbatical in the nearest Federal courthouse") (citations and internal quotation marks omitted). The distinction makes a good deal of sense because the "[o]pportunity costs of litigation rise following release, diminishing the need for special precautions against weak suits." *Kerr,* 138 F.3d at 323. In light of the overwhelming clarity of the statutory text, we join the Seventh Circuit in holding that section 1997e(e) applies only to prisoners who are incarcerated at the time they seek relief, and not to former prisoners who seek damages for injuries suffered while they were incarcerated. *See id.; see also, Greig v. Goord,* 169 F.3d 165, 167 (2nd Cir.1999) (interpreting "prisoner" as used in section 1997e(a), dealing with administrative exhaustion, as not applying to former prisoners no longer incarcerated); *Doe v. Washington County,* 150 F.3d 920, 924 (8th Cir.1998) (interpreting "prisoner" as used in section 1997e(d), dealing with attorneys' fees, as not applying to former prisoners).

B.

6

The district court dismissed without prejudice two categories of plaintiffs because they failed to exhaust their administrative remedies before bringing suit and thus failed to satisfy the exhaustion requirement of section 1997e(a).[6] That section provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Plaintiffs make a valiant argument that they should not be required to exhaust their administrative remedies before being allowed to proceed in court because (1) the GDC's treatment of similar claims demonstrates that it would be futile for plaintiffs to pursue administrative relief, and (2) no administrative relief is "available" to plaintiffs because the GDC Inmate Grievance Procedures do not provide for the monetary damages award plaintiffs seek. At least with regard to the issue of what remedies are "available" under section 1997e(a), some courts have agreed with the plaintiffs. *See Whitley v. Hunt,* 158 F.3d 882, 887 (5th Cir.1998); *Lunsford v. Jumao-As,* 155 F.3d 1178, 1179 (9th Cir.1998); *Garrett v. Hawk,* 127 F.3d 1263, 1267 (10th Cir.1997). But we think the disposition of this issue is controlled by our recent decision in *Alexander v. Hawk,* 159 F.3d 1321 (11th Cir.1998).

In *Alexander,* we held that "the judicially recognized futility and inadequacy exceptions do not survive the new mandatory exhaustion requirement of the PLRA.... Since exhaustion is now a pre-condition to suit, the courts cannot simply waive those requirements where they determine they are futile or inadequate." *Id.* at 1325-26. Plaintiffs' argument in effect asks us either to reconsider *Alexander* or to limit the case to its facts. We are unable to reconsider *Alexander* because only the court sitting *en banc* has the authority to overrule circuit precedent. We decline to limit the case to its facts because we find the general

---

[6]The district court dismissed without prejudice the claims of Locklear, Kilgore, and Langes for failure to exhaust administrative remedies, and also held that these plaintiffs' claims for compensatory and punitive damages were barred by section 1997e(e). Separately, the district court dismissed without prejudice plaintiff Brinkley's claims for failure to exhaust administrative remedies, but held that Brinkley had alleged sufficient physical injury to survive section 1997e(e). Because we find the administrative exhaustion issue dispositive, we treat these two classes of plaintiffs together. If section 1997e(a) precludes the filing of these plaintiffs' claims until after they have exhausted their administrative remedies, then the district court's "holding" concerning the applicability of section 1997e(e) is merely unnecessary dicta.

principles of *Alexander* persuasive. For the reasons stated therein, we reaffirm that section 1997e(a) imposes a mandatory requirement on prisoners seeking judicial relief to exhaust their administrative remedies first. Further, we reaffirm that the term "available" as used in section 1997e(a) does not mean that prison inmates must only exhaust their administrative remedies if the relief they seek is "available" within the administrative apparatus; instead, the term means that a prisoner must exhaust all administrative remedies that are available before filing suit, regardless of their adequacy. *See id.; see also, Perez v. Wisconsin Dep't of Corrections,* 182 F.3d 532, 536-37 (7th Cir.1999) (concurring with *Alexander* on the issue of "available" remedies).

C.

Even though plaintiff James Wade was still in prison and had exhausted all of his administrative remedies, the district court also dismissed with prejudice Wade's claims to compensatory and punitive damages because his allegations of physical injury were not serious enough to satisfy the physical injury requirement of section 1997e(e). Wade alleged that members of the GDC "Tactical Squad" subjected him to a body cavity search while female staff were present, and also forced him to "dry shave." The issue on this appeal is whether the "dry shave" allegation, standing alone, depicts an injury serious enough to meet the section 1997e(e) requirement of physical injury.

Section 1997e(e) does not define "physical injury." Wade asks us to interpret this part of the statute to mean that *any* allegation of physical injury is sufficient, including physical manifestations of purely mental or emotional injury. But we think such an interpretation would undermine the statute's essential purpose—"to curtail frivolous and abusive prisoner litigation." *Alexander,* 159 F.3d at 1324. Congress was clearly trying to preclude some part of the litigation routinely pursued by prison inmates from being brought, and Wade's reading of the statute would almost render the congressional exclusion an empty set. Further, allowing prisoners to surmount this new statutory hurdle with purely trivial allegations of physical injury would make no sense in light of our basic understanding that "routine discomfort is part of the penalty that criminal offenders pay for their offenses against society." *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 1000,

8

117 L.Ed.2d 156 (1992) (citation and internal quotation marks omitted).

We therefore join the Fifth Circuit in fusing the physical injury analysis under section 1997e(e) with the framework set out by the Supreme Court in *Hudson* for analyzing claims brought under the Eighth Amendment for cruel and unusual punishment, and hold that in order to satisfy section 1997e(e) the physical injury must be more than de minimis, but need not be significant.[7] *Gomez v. Chandler,* 163 F.3d 921, 924 (5th Cir.1999). We do so, however, with the understanding that our holding today does not affect our Eighth Amendment jurisprudence, but only uses the well established Eighth Amendment standards to guide us in our section 1997e(e) analysis. The Fifth Circuit has concluded, even after *Hudson,* that in order "to support an Eighth Amendment excessive force claim a prisoner must have suffered from the excessive force a more than de minimis *physical* injury." *Gomez,* 163 F.3d at 924 (emphasis added). In light of the *Hudson* Court's rather fluid approach to what can constitute a cognizable injury under the Eighth Amendment, *see Hudson,* 503 U.S. at 9, 112 S.Ct. at 1000 (malicious and sadistic use of force is violative "whether or not significant injury is evident"), we have never held that a prisoner must allege a *physical* injury in order to make out a cognizable claim under the Eighth Amendment. Indeed, some of our cases suggest the contrary. *See, e.g., Campbell v. Sikes,* 169 F.3d 1353, 1375 (11th Cir.1999) (extent of the injury is one of the "factors" used in determining whether use of force was malicious and sadistic). We express no view on the issue today, and hold only that a prisoner must allege more than a de minimis physical injury in order to satisfy the requirement of section 1997e(e).

Viewing the allegations in the light most favorable to plaintiff, we conclude that Wade has not alleged a physical injury that is more than de minimis. A "dry shave," without more, is simply not the kind of "injury" that is cognizable under section 1997e(e). *Cf. Shabazz v. Barnauskas,* 790 F.2d 1536, 1538 (11th

---

[7]We do not resolve the question whether de minimis uses of physical force might satisfy section 1997e(e) if they are of the sort "repugnant to the conscience of mankind," *Hudson,* 503 U.S. at 10, 112 S.Ct. at 1000, (citation and internal quotation marks omitted), because we find that on this record the question is not presented. Wade's forced "dry shave" is not the sort of physical force "repugnant to the conscience of mankind."

Cir.1986) (dismissing plaintiff's Eighth Amendment cruel and unusual punishment claim because allegation of forced shave was de minimis, even though the shaving caused "bleeding, inflammation, irritation, ingrowing of hairs, infection, purulence and pain"), *cert. denied,* 479 U.S. 1011, 107 S.Ct. 655, 93 L.Ed.2d 709 (1986). Were we to hold that this single allegation is sufficient to satisfy the statutory requirement of physical injury, we would surely sap the congressional scheme of its essential purpose and vitality.

D.

Because we find that Wade's injuries are not sufficient to meet the physical injury requirement of section 1997e(e), we must decide whether the statute is constitutional as applied to bar his claims for compensatory and punitive damages in this case.

1.

Wade argues that the statutory bar to claims not involving physical injury amounts to a denial of due process under the Fifth Amendment. Courts and commentators have approached the issue of whether Congress can tailor jurisdiction so as to preclude all effective remedies for a claimed constitutional violation with so much dodging and trepidation that the D.C. Circuit has been led to write that "it has become something of a time-honored tradition for the Supreme Court and lower federal courts to find that Congress did not intend to preclude altogether judicial review of constitutional claims in light of the serious due process concerns that such preclusion would raise." *Bartlett v. Bowen,* 816 F.2d 695, 699 (D.C.Cir.1987). And we think that if section 1997e(e) actually precluded *all* effective judicial review, the statute would raise constitutional questions that would be, at the very least, troublesome. Because we find that the statute is best read as only a limitation on a damages remedy, however, we need not address the vexing jurisdictional questions today.

At the outset, we assume that section 1997e(e)'s bar to claims "for mental or emotional injury suffered while in custody without a prior showing of physical injury" actually operates to preclude some claims of a constitutional dimension that a prisoner might have been able to bring before the PLRA was

enacted. Section 1997e(e) refers to claims for injuries "suffered." Use of the past tense indicates that the provision constitutes a limitation on a damages remedy only, and does not impair a prisoner's right to seek declaratory and injunctive relief for constitutional violations.[8] An action at law for money damages is the assumed remedy for a violation of legal rights that has occurred in the past, whereas the threat of imminent future harm can only be cured by an equitable remedy. Thus, Congress could not have meant to preclude claims for declaratory and injunctive relief under the PLRA because such relief addresses a violation the prisoner has not yet "suffered." The harm will be suffered, if at all, in the future. No injury is required in a pleading for prospective equitable relief; only a threat of future injury is necessary. We therefore join the other circuits who have considered the issue in holding that section 1997e(e) only precludes some actions for money damages, and does not materially thwart actions for declaratory and injunctive relief.[9] *See Harper v. Showers,* 174 F.3d 716, 719 (5th Cir.1999); *Perkins v. Kansas Dep't of Corrections,* 165 F.3d 803, 808 (10th Cir.1999); *Davis v. District of Columbia,* 158 F.3d 1342, 1346 (D.C.Cir.1998); *Zehner v. Trigg,* 133 F.3d 459, 462 (7th Cir.1997).

Read as a limitation on recovery only, the provision presents no constitutional infirmity that would offend the Due Process Clause of the Fifth Amendment. Despite Wade's ringing invocation of *Marbury v. Madison,* that "[t]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury," 5 U.S. (1 Cranch) 137, 162, 2 L.Ed. 60 (1803), this case is not about a denial of the law's protection. What this issue boils down to is whether or not the Constitution of the United States mandates a tort damages remedy for every claimed constitutional violation; and the answer is certainly that it does not. In both *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d

---

[8]This conclusion is further bolstered by the fact that the statutory provision is entitled, "Limitation on recovery."

[9]We express no view on whether section 1997e(e) would bar an action for nominal damages that are normally available for the violation of certain "absolute" constitutional rights, without any showing of actual injury. *See Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978). Plaintiffs have not sought nominal damages in this case, and so we do not address the issue.

648 (1983) and *Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), as the D.C.

Circuit has observed, the Supreme Court declined to infer a *Bivens*[10] remedy for constitutional violations

where Congress had provided an alternative remedial scheme, even though Congress had failed to provide

for complete relief. *Davis,* 158 F.3d at 1346-47. *Schweiker* is particularly instructive because the Court held

that there was no *Bivens* remedy for people who had allegedly been denied due process in applying for Social

Security disability benefits, even though this meant that they would have no "remedy in damages for

emotional distress." 487 U.S. at 425, 108 S.Ct. at 2468. And in the military context, the Court has been even

more blatant in insisting that not every constitutional deprivation can give rise to an action for damages. *See*

*Chappell v. Wallace,* 462 U.S. 296, 304-05, 103 S.Ct. 2362, 2368 76 L.Ed.2d 586 (1983) (no *Bivens* remedy

for Navy plaintiffs alleging racial discrimination); *United States v. Stanley,* 483 U.S. 669, 683-84, 107 S.Ct.

3054, 3064, 97 L.Ed.2d 550 (1987) (no *Bivens* remedy for plaintiff suing the military for injuries resulting

from the administration to him of the drug LSD, without his consent, as part of an army experiment).[11]

Whatever our ultimate resolution of Congress' power to restrict judicial enforcement of federal rights,

---

[10]*Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (inferring a tort damages action for violations of plaintiff's Fourth Amendment rights).

[11]Additionally, in the section 1983 context, the Seventh Circuit has observed that "Congress itself created the § 1983 damages remedy.... The Supreme Court has never held that this remedy is constitutionally required, and it would be odd to conclude that Congress may not take away by statute what it has given by statute." *Zehner,* 133 F.3d at 461-62.

It is true that in some limited areas the Supreme Court has been more insistent that a damages remedy be provided. In the context of the Fifth Amendment's Takings Clause, the Court has recognized a constitutional obligation to provide a monetary remedy for a governmental appropriation because "it is the Constitution that dictates the remedy for interference with property rights amounting to a taking." *First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 316 n. 9, 107 S.Ct. 2378, 2386 n. 9, 96 L.Ed.2d 250 (1987). And with some qualifications, there appears to be a due process obligation on the part of states to provide a refund remedy for taxes unconstitutionally exacted, where there is no adequate prepayment remedy. *See* *Reich v. Collins,* 513 U.S. 106, 115 S.Ct. 547, 130 L.Ed.2d 454 (1994); *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco,* 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990). To argue that these cases establish some general right to a damages remedy for every claimed constitutional violation, however, is to sweep too broadly. Damages were required in those cases because a compensatory remedy was particularly related to the constitutional violation.

it is clear that Congress has wide latitude to decide how violations of those rights shall be remedied.[12] In this case, Congress has chosen to enforce prisoners' constitutional rights through suits for declaratory and injunctive relief, and not through actions for damages. It is true that practical application of the congressional scheme will mean that some plaintiffs will be without any relief. *See Zehner,* 133 F.3d at 462-63 (plaintiffs cannot be compensated at all for their fear that they may have been exposed to asbestos in the past). But "the Constitution does not demand an individually effective remedy for every constitutional violation." *Id.* If it did, we would have to rule unconstitutional our doctrines of absolute and qualified immunity. We therefore join the Seventh and D.C. Circuits in concluding that Congress has left open avenues of declaratory and injunctive relief that are ample for constitutional purposes, and hold that section 1997e(e) does not violate the Due Process Clause of the Fifth Amendment. *See Davis,* 158 F.3d at 1346; *Zehner,* 133 F.3d at 462-63.

2.

Wade also argues that section 1997e(e) violates the Equal Protection component of the Due Process Clause of the Fifth Amendment.[13] Classifications that disadvantage a suspect class or impinge upon the exercise of a fundamental right are subject to strict scrutiny, while classifications that do neither are subject only to review for rationality. *Plyler v. Doe,* 457 U.S. 202, 216-17, 102 S.Ct. 2382, 2394-95, 72 L.Ed.2d 786 (1982). Wade argues that section 1997e(e) impinges on his fundamental right to access the courts.

Wade's argument is similar to his first attack, but it comes dressed in Equal Protection clothing. Prison inmates do have a constitutional right of access—they must be afforded "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to a court." *Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996). As discussed in the context of Wade's

---

[12]*See* Henry Hart, "The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic," 66 *Harv. L.Rev.* 1362, 1366 (1953) ("It must be plain that Congress necessarily has a wide choice in the selection of remedies, and that a complaint about action of this kind can rarely be of constitutional dimension.").

[13]Federal legislation is subject to analysis under the equal protection component of the Fifth Amendment's Due Process Clause. *Adarand Constrs., Inc. v. Pena,* 515 U.S. 200, 213, 115 S.Ct. 2097, 2105-06, 132 L.Ed.2d 158 (1995).

due process argument, section 1997e(e) does not affect prisoners' right of judicial access.  It only affects the *remedies* inmates may seek.  Prisoners still retain a "reasonably adequate opportunity" to seek relief from constitutional violations that do not involve physical injury, because they may still file suits for declaratory and injunctive relief.  They simply may not recover monetary damages for such claims.  *See Davis,* 158 F.3d at 1347;  *Zehner,* 133 F.3d at 463.

Because section 1997e(e) neither disadvantages a suspect class nor impinges on a fundamental right, we review the provision only for rationality.  *Plyler,* 457 U.S. at 216-217, 102 S.Ct. at 2394-95.  Under this lenient standard of review, section 1997e(e) easily passes muster.  Congress' stated purpose to limit frivolous lawsuits by those who face uniquely low opportunity costs for pursuing litigation rationally supports its action in adopting the measure.  Wade's reliance on *Romer v. Evans,* 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) is misplaced.  In that case, the Supreme Court struck down a Colorado constitutional provision that targeted gays and lesbians and denied them political redress "across the board," *id.* at 633-34, 116 S.Ct. at 1628-29, because there was *no* rationale for the provision other than animus against a politically unpopular group.  In this case, Congress' much more narrow restriction on the right of prisoners to obtain certain forms of relief, coupled with a rationale that does not reduce to mere animus against prisoners, convince us that the section 1997e(e) easily passes rationality review.[14]

---

[14]Plaintiffs make a somewhat bizarre separation of powers argument involving *United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871), and *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).  *Klein* was a unique case in which the Court struck down a congressional attempt to prescribe a "rule of decision" in particular cases.  Plaintiffs argue that here, too, Congress is trying to prescribe a "rule of decision" by precluding some actions for compensatory and punitive damages.  But plaintiffs' argument sweeps far too broadly.  Taken to its logical conclusion, the argument would invalidate almost any congressional alteration of judge-made common law.  Congress can certainly "intrude" upon the judicial province and prescribe a "rule of decision" by simply amending the governing law.  *See Robertson v. Seattle Audubon Soc'y,* 503 U.S. 429, 440, 112 S.Ct. 1407, 1414, 118 L.Ed.2d 73 (1992).  And that is just what Congress has done here.  In *City of Boerne,* the Court struck down the Religious Freedom Restoration Act because Congress had exceeded its Fourteenth Amendment power to make laws for the enforcement of the Free Exercise Clause of the First Amendment.  In order to find the analogy between that case and this one sound, we would have to hold that Congress is without the constitutional power to structure remedies for claimed constitutional violations.  We have already traveled that road in this and the preceding section, and we found the argument to be without merit.

14

IV.

For the forgoing reasons, we AFFIRM the district court's ruling with respect to plaintiffs Locklear, Kilgore, Langes, and Brinkley. We also AFFIRM the district court's dismissal of plaintiff Wade's claims for compensatory and punitive damages, but REMAND with instructions that the district court consider Wade's claims for declaratory and injunctive relief. We VACATE the district court's dismissal of claims for compensatory and punitive damages for plaintiffs Chadwick, Harris, Cook, Hooks, Nation, and Dailey, and REMAND for further proceedings consistent with this opinion.

SO ORDERED.