**Mindy DOAN, et al., Plaintiffs,**

v.

**Sheriff Leland WATSON, individually and as former Sheriff of Floyd County, Indiana, Randall Hubbard, individually and as Sheriff of Floyd County, Indiana, Defendants.**

No. NA 99–4–C–B/S.

United States District Court,
S.D. Indiana,
New Albany Division.

Oct. 10, 2001.

Bart M. Betteau, McDaniel & Betteau, New Albany, IN, Bruce A. Brightwell, Louisville, KY, for Plaintiffs.

Stephen L. Huddleston, Clarke House, Franklin, IN, Richard T. Mullineaux, Kightlinger & Gray, New Albany, IN, Dave Whalin, Landrum & Shouse, Louisville, KY, for Defendants.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

BARKER, District Judge.

This matter comes before the Court on cross motions for summary judgment. Plaintiffs, Mindy Doan, et al. (collectively "Plaintiffs"),[1] have filed suit under 42 U.S.C. § 1983, alleging that former Floyd County, Indiana Sheriff Leland Watson, individually and in his official capacity, and current Floyd County, Indiana Sheriff Randall Hubbard, individually and in his official capacity (collectively "Defendants"), violated Plaintiffs' constitutional rights by administering improper strip searches. For the reasons set forth below, Plaintiffs' Motion for Partial Summary Judgment is *GRANTED*, and Defendants' Motion for Summary Judgment is *DENIED*.

*Factual Background*

Between 1997 and 1999, Defendants Leland Watson and Randall Hubbard successively served as Floyd County Sheriff, in which capacity they established and implemented policies at the Floyd County Jail. (Second Amended Compl. ¶ 4.) During that time, several individuals who had been arrested in Floyd County for misdemeanor offenses and incarcerated in the Floyd County Jail were subjected to intake searches and delousing procedures before entering the general prison population. (*Id.* ¶¶ 6–27.) To execute these searches, the prisoner would first be directed to the shower room. (Pl's Statement of Material Facts, Ex. 3, III.A.) A jail official would instruct the prisoner to remove his or her clothing. (*Id.*, Ex. 3, III.B.) Once the prisoner was naked, the Floyd County Corrections Policy for Inmate Searches/Evidence instructed prison officials, "without touching [the prisoner], [to] examine their entire body to make certain they are not hiding any contraband or weapons on or in their body. Pay particular attention to the mouth, ears, hair, armpits, genital area and anal area. Look between fingers and toes and on the bottom of the feet." (*Id.*, Ex. 3, III.E.) Following this examination, officials escorted prisoners to the shower room, sprayed prisoners with delousing solution, told the prisoners to shampoo the solution in, and then allowed the prisoners to rinse the solution from their bodies. (Pl's Statement of Material Facts ¶ 5.) Following this procedure, prisoners were to be dressed in orange prison uniforms. (*Id.*, Ex. 3, II.E.) In January 1999, Defendant Hubbard enacted a new policy regarding admission strip searches, which

---

1. Plaintiff Doan serves as class representative for a class that includes "all persons arrested for offenses not greater than a misdemeanor or Operating While Intoxicated, as a class D felony, between January 13, 1997, and January 13, 1999, and who were required by the Floyd County Jail to remove their clothing for visual inspection of all or part of their exposed bodies, unless there existed reasonable cause to believe they were carrying concealed weapons or contraband." (Entry of Mar. 2, 2000, at 25.)

934

enumerated limited circumstances under which admission strip searches would be permitted. (*Id.*, Ex. 5.) These circumstances related primarily to a prisoner's prior convictions, the nature of the charged offense, and officers' reasonable suspicion that a prisoner might be hiding weapons or contraband. (*Id.*)

### Standards of Review

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the particular issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence of a factual dispute will not bar summary judgment; the facts in dispute must be outcome-determinative. *Id.* In considering a motion for summary judgment, a court must review the record and draw all reasonable inferences in the light most favorable to the non-moving party. *Id.* at 255, 106 S.Ct. 2505; *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001). "[A] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion." *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir.1997). Summary judgment is required only if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### Analysis

1. Application of the PLRA

Defendants argue that Plaintiffs' suits are barred by the Prison Litigation Reform Act ("PLRA"), which restricts the rights of prisoners to bring federal actions based on mental or emotional injury. Plaintiffs respond that the statute applies only to litigants who were prisoners at the time their claims were filed. By waiting to file suit until after the completion of their detention, the argument follows, Plaintiffs avoid application of the PLRA. The relevant portion of the statute reads, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

Defendants argue that the Seventh Circuit has issued contradictory statements as to whether this provision applies to claims by former inmates based on injuries arising during detention. Specifically, Defendants contend that the court's decision in *Zehner v. Trigg*, 133 F.3d 459 (7th Cir. 1997) suggests that the PLRA applies to claims by both current and former inmates, so long as the conduct giving rise to the complaint occurred during the period of incarceration. In *Zehner*, a group of Indiana state prisoners were allegedly exposed to asbestos while working in a prison kitchen. *Id.* at 460. The class of plaintiffs consisted of "[a]ll offenders in the custody of the Indiana Department of Corrections who were employed in the 'old' kitchen or in the tunnel under the 'old' kitchen at the Indiana Youth Center … for a total of thirty days or more after October 14, 1991, through October 14, 1993." *Zehner v. Trigg*, 952 F.Supp. 1318, 1321 (S.D.Ind.1997). The plaintiffs filed suit against corrections officials for mental and emotional injuries resulting from the exposure. *Zehner*, 133 F.3d at 460. Not all class members remained in custody at the time the complaint was filed. *Zehner*, 952 F.Supp. at 1323. The district court dismissed the action without prejudice,

concluding that the PLRA must apply to claims arising during incarceration when brought by current or former prisoners. *Id.* at 1327. The Seventh Circuit affirmed the dismissal without explicitly revisiting the issue of whether the PLRA applies to claims by former prisoners. *Zehner,* 133 F.3d at 464.

Defendant claims that the Seventh Circuit's decision in *Zehner* creates ambiguity regarding the PLRA's application to former prisoners. The court remedied any such ambiguity, however, in a lengthy explanation in *Kerr v. Puckett,* 138 F.3d 321 (7th Cir.1998). There, Kerr, a former prisoner claimed that "brainwashing" techniques utilized in a prison substance abuse program violated his constitutional rights. *Id.* at 322. Kerr filed suit after being released on parole. *Id.* The Seventh Circuit found that the PLRA did not apply to claims brought by a former prisoner. *Id.* at 323. In language directly addressing Defendants' arguments regarding *Zehner,* the court stated that its affirmation of the dismissal in *Zehner* was based not on the application of the PLRA to former prisoners, but "on other grounds." *Id.* at 322.

■ In the present case, Defendants attempt to create ambiguity where there is none. The Seventh Circuit has clearly held and district courts in this circuit have repeatedly recognized that the PLRA does not apply to claims brought by former inmates. *Kerr,* 138 F.3d 321; *Gary v. Sheahan,* 2000 WL 889785, at *2 (N.D.Ill. June 26, 2000); *Doe v. Cook County,* 1999 WL 1069244, at *3 (N.D.Ill. Nov. 22, 1999). Because Plaintiffs filed their claims following their detention, the PLRA does not require them to produce evidence of physical injury to pursue their claims. There-fore, Defendants' Motion for Summary Judgment on this issue is *DENIED.*

### 2. Constitutionality of the Policy

Plaintiffs contend that the Floyd County delousing procedure constitutes an unreasonable search pursuant to the Fourth Amendment.[2] Defendants respond that the delousing procedure does not constitute a "strip search," or, at least, that ambiguity exists regarding the precise definition of a "strip search." In making this argument, however, Defendants advocate a strained interpretation of the term. A search is commonly understood to mean "[a]n examination of a person's body, property, or other area that the person would reasonably be expected to consider as private, conducted by a law-enforcement officer for the purpose of finding evidence of a crime," whereas a "strip search" is specifically "[a] search of a person conducted after that person's clothes have been removed, the purpose being to find any contraband the person might be hiding." *Black's Law Dictionary* (7th ed.1999). The Seventh Circuit has defined a strip search as "a visual inspection of a naked inmate without intrusion into the person's body cavities." *Peckham v. Wisconsin Dep't of Corrections,* 141 F.3d 694 (7th Cir.1998). The court has also noted that "[o]bservation is a form of search." *Johnson v. Phelan,* 69 F.3d 144, 145 (7th Cir. 1995).

■ The Floyd County Jail intake procedure clearly includes a strip search. The policy specifically instructed officers to inspect prisoners' naked bodies in search of contraband, paying particular attention to the genital and anal areas. This directive indicates that officers were in-

---

**2.** Plaintiffs briefly reference the Fourteenth Amendment in their Motion for Partial Summary Judgment, but they do not provide the Court with even the most basic link between Fourteenth Amendment protections and their claims. Therefore, we do not consider these arguments in evaluating the present motion.

**936**

tended to observe the prisoners. That the policy did not command the prisoner· to bend over to facilitate the viewing of the named areas does not mitigate the fact that these were unclothed inspections for contraband. Because the delousing procedure included the essential elements of a strip search, we must apply Fourth Amendment analysis to determine its constitutionality.

■ The Fourth Amendment generally proscribes unreasonable searches and seizures. U.S. Const. amend. IV. This prohibition requires that searches be reasonable under the circumstances. *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *U.S. v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974); *United States v. Brown,* 64 F.3d 1083, 1086 (7th Cir.1995). To determine the reasonableness of a search, such as the type at issue here, courts apply a balancing test defined by the Supreme Court in *Wolfish:*

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case, it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

441 U.S. at 558, 99 S.Ct. 1861 (citations omitted). "The more intrusive the search, the closer governmental authorities must come to demonstrating probable cause for believing that the search will uncover the objects for which the search is being conducted." *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1273 (7th Cir.1983), *citing Terry v. Ohio,* 392 U.S. 1, 18, n. 15, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "It is beyond question that a strip search initiated without justification—such as a 'blanket strip search policy'—is unconstitutional." *Doe v. Village of Downers Grove,* 1992 WL 8720, at *2 (N.D.Ill. Jan. 15, 1992), *citing Mary Beth G.,* 723 F.2d at 1271–73; *Doe v. Calumet City, Ill.,* 754 F.Supp. 1211, 1219 (N.D.Ill.1990); *Tinetti v. Wittke,* 479 F.Supp. 486, 491 (E.D.Wis. 1979), *aff'd per curiam,* 620 F.2d 160 (7th Cir.1980).

The Seventh Circuit analyzed the Fourth Amendment implications of similar searches in *Mary Beth G.* There, women arrested on misdemeanor charges and awaiting the arrival of bail money were subjected to strip searches and inspections of their body cavities by female officers. 723 F.2d at 1266. The searches were conducted on all women detained in city lockups, regardless of whether officials had reason to believe they were in possession of contraband. *Id.* The court observed, "We can think of few exercises of authority by the state that intrude on the citizen's privacy and dignity as severely as the visual anal and genital searches practiced here." *Id.* at 1272. Balancing the nature of the searches against the governmental interest in maintaining security and preventing the importation of contraband into prison facilities, the Seventh Circuit held that "the strip searches bore an insubstantial relationship to security needs," rendering them unreasonable under Fourth Amendment analysis. *Id.* at 1273.

Here, the searches carried out by Defendants closely resemble the searches at issue in *Mary Beth G.* Defendants admit that the strip search procedure was applied to all prisoners prior to their being released into the prison population. (D's Resp. to Pl's Statement of Material Facts ¶ 19.) Although Defendants correctly identify their duty to safeguard the prison environment, they have not demonstrated any factual basis to relate the blanket strip search policy to legitimate security inter-

ests. The delousing procedure administered by Defendants in the Floyd County Jail violates the Fourth Amendment's prohibition of unreasonable searches. Accordingly, Plaintiffs' Motion for Summary Judgment is *GRANTED* on this issue, and Defendants' Cross Motion for Summary Judgment is *DENIED*.

### 3. Qualified immunity

Defendants contend that they should enjoy qualified immunity for their administration of the strip-search procedure, pursuant to § 1983. Qualified immunity is available only to officials with discretionary or policymaking authority when sued in their individual capacities under § 1983. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Jacobs v. City of Chicago,* 215 F.3d 758, 766 (7th Cir.2000). Essentially, this defense is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Officials acting under qualified immunity are not subjected to suit "unless their actions violate clearly established statutory or constitutional rights then known to a reasonable officer." *Ulichny v. Merton Cmty. Sch. Dist.,* 249 F.3d 686, 706 (7th Cir.2001).

The analysis of a qualified immunity defense requires an ordered, two-step inquiry. First, the Court must determine "whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz,* 533 U.S. 194, ——, 121 S.Ct. 2151, 2155, 150 L.Ed.2d 272 (2001). For this purpose, we examine the facts in the light most favorable to the party asserting the injury. *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). On this point, we need not restate our analysis, because we have already determined that the procedure violated Plaintiffs' Fourth Amendment rights. *See* discussion *supra.*

"[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier,* 533 U.S. at ——, 121 S.Ct. at 2156. This determination must be made in light of the context surrounding the alleged violation. *Id.* A right may be clearly established "if it is so obvious that a reasonable state actor would know that what they were doing violated the Constitution or if a closely analogous case establishes that the conduct is unconstitutional." *Willits v. Wal–Mart Stores, Inc.,* 2001 WL 1028482 (S.D.Ind. Aug. 14, 2001), *citing Siebert v. Severino,* 256 F.3d 648, 654–55 (7th Cir. 2001). Conversely, if reasonable officials could disagree on the issue, a right is not clearly established. *Ulichny,* 249 F.3d at 706; *Hinnen v. Kelly,* 992 F.2d 140, 142–43 (7th Cir.1993).

The closely analogous case of *Mary Beth G.* provided strong indication that Defendants' procedures were being carried out in violation of the Fourth Amendment. Moreover, the revised policy demonstrates that Defendants either had knowledge or reasonably should have been aware of the necessity of probable cause to justify a strip search. Indeed, each of the new policy's listed criteria relates in some way to the likelihood that the prisoner will bring weapons or contraband into the jail. However, the admission strip searches conducted between January 1997 and January 1999 were not supported by such explanation, despite the clear need for some individualized justification. Because Plaintiffs have pled sufficient facts to establish a constitutional violation, and because the rights at issue were clearly established at the time of the alleged violation, Defendants are not shielded by qualified immunity in this matter. Ac-

cordingly, Defendants' Motion for Summary Judgment on this issue is *DENIED*.

*Conclusion*

The parties filed cross motions for summary judgment. For the reasons stated above 1) the PLRA does not bar Plaintiffs' suits; 2) Defendants' strip search procedure violated Plaintiffs' Fourth Amendment rights; and 3) Defendants are not protected by qualified immunity for such violations. Accordingly, Plaintiffs' Partial Motion for Summary Judgment is *GRANTED* and Defendants' Motion for Summary Judgment is *DENIED*.