962 F.2d 17
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 David R. JOLIVET, Plaintiff-Appellant,
v.
Robert E. STEELE; Charles Hobbs; Colleen Bartell,
Defendants-Appellees.
 No. 91-4065.
 United States Court of Appeals, Tenth Circuit.
 April 30, 1992.
 
 Before EBEL and BARRETT, Circuit Judges, and KANE,* Senior District Judge.
 ORDER AND JUDGMENT**
 BARRETT, Senior Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff-appellant David R. Jolivet appeals from a judgment dismissing his 42 U.S.C. § 1983 action for injunctive relief and damages arising out of Defendants' December 1, 1988, postponement of Plaintiff's marriage to Dorothy Jolivet, which had previously been scheduled for that date. The district court dismissed as moot the claim for injunctive relief but not the claim for damages after Plaintiff was permitted to marry on January 14, 1989. It later granted Defendants' motion for summary judgment on Plaintiff's damages claim.
 
 
 3
 Plaintiff argues that the district court failed to make a de novo review of the magistrate judge's Report and Recommendation and objections thereto, and failed to consider Dorothy Jolivet's affidavit. He further argues that Defendants improperly relied on a prison visitation policy to postpone Plaintiff's marriage. We reject these contentions and affirm.
 
 
 4
 At all relevant times, Plaintiff was an inmate at Uinta II facility, a maximum security prison in Utah. He began corresponding with Dorothy Jolivet (then Dorothy Pacheco) in 1986 but could not visit with her because her divorce from another inmate, Sam Stevenson Pacheco, was pending. Her divorce was finalized in late 1987. Plaintiff was then informed by a nondefendant that Dorothy Jolivet could visit Plaintiff if she provided a copy of her divorce papers. She provided a copy of her divorce judgment, which showed that her maiden name was Jarrell, and her driver's license, which showed that her married name was Pacheco. She was allowed to visit Plaintiff beginning in March 1988. R.I, doc. 31 at 2-3. None of the Defendants were normally involved in verifying proper identification, which is within the jurisdiction of Internal Security and Bureau of Enforcement and Investigation. R.I, doc. 38 at 2.
 
 
 5
 Plaintiff asserts, and Defendants deny, that on April 19, 1988, Plaintiff submitted to Defendant Colleen Bartell, a social service worker at Uinta, a request for permission to marry Dorothy Jolivet. The request was approved by Defendants Bartell and Robert Steele, the Executive Officer of the Uinta facility responsible for overseeing the management and security of the Uinta facilities, on July 6, 1988. Plaintiff requested that the wedding occur on September 1, 1988. In late August 1988, Defendant Bartell told Plaintiff that the marriage request form had been lost and he would have to submit another form. The September ceremony was cancelled. R.I, doc. 31 at 1-4.
 
 
 6
 However, it is undisputed that in late June or early July 1988, Plaintiff submitted an application for permission to marry Dorothy Jolivet. The application was approved July 6, 1988. Plaintiff completed the necessary arrangements and chose December 1, 1988, as a wedding date. Because December 1, 1988, was not a regular visiting day, special clearance was required for visitors participating in and attending the wedding. Four visitors were given clearance to attend the wedding: Judge A.A. Mitchell, Dorothy Laverne Jarrell, William Steiner, and Kimberly Laverne Steiner. R.I, doc. 40 at 1-2.
 
 
 7
 Dorothy Jolivet paid for a marriage license, which was valid for thirty days; arranged for the services of a judge; and took three days off from school to prepare for the ceremony, incurring expenses in the amount of $360.00. R.I, doc. 31 at 5-6.
 
 
 8
 On December 1, 1988, Defendant Steele was contacted by Internal Security Officer Alan Blanchard, who had noticed a discrepancy in the identification presented by two women visitors claiming they were present to attend Plaintiff's wedding. The women presented photographic identification in the names of Dorothy Pacheco and Kimberly Shaffer. R.I, doc. 39 at 2-3. Blanchard had clearance for visitors named Dorothy Jarrell and Kimberly Steiner. R.I, doc. 37 at 4. The Utah Department of Corrections had a policy that visitors eighteen years of age or older are required to show positive photographic identification prior to being admitted to visit. R.I, doc. 37 at 2.
 
 
 9
 Defendant Steele decided to postpone the wedding and deny future visits by Dorothy Jolivet until she obtained positive identification. Dorothy Jolivet informed Defendant Steele that she had divorce documents showing that her maiden[1] name was Jarrell. Defendant Steele would not accept the written documents in lieu of positive photographic identification pursuant to the Utah Department of Corrections policy, and because the documents were not certified. He treated Dorothy Jolivet no differently than he would any other visitor who presented improper identification. R.I, doc. 39 at 3. None of the Defendants had been involved in previous decisions allowing Dorothy Jolivet to visit Plaintiff. R.I, docs. 38 at 2-3, 39 at 2, 40 at 2-3.
 
 
 10
 The parties filed cross motions for summary judgment. A magistrate judge issued a Report and Recommendation in which he concluded that Plaintiff's December 1 marriage was postponed because of the prison's visitation policy requiring visitors over eighteen years of age to show positive photographic identification before being admitted to visit, and guest "Dorothy Jarrell" only had photographic identification in the name of "Dorothy Pacheco." The magistrate judge further concluded that the visitation policy is reasonably related to penological interests of security.
 
 
 11
 Plaintiff filed objections to the Report and Recommendation, noting that the prison had permitted Dorothy Jolivet to visit previously with the same identification. After reviewing the objections, the court noted it appeared that one of the prison's concerns in postponing the wedding was Dorothy Jolivet's marital status at the time she was to marry Plaintiff. The court then concluded the Report and Recommendation was correct "in all essential respects," and adopted it in its entirety. R.I, doc. 47 at 2.
 
 
 12
 Plaintiff asserts that the district court failed to make a de novo review of the magistrate judge's Report and Recommendation and Plaintiff's objections thereto, as required by 28 U.S.C. § 636(b)(1). The substance of his argument is that the court was wrong in believing that the prison had a legitimate concern about Dorothy Jolivet's marital status on December 1, 1988. While concerns over the marital status of a bride-to-be visitor could conceivably justify a stricter adherence to the visitation policy, Defendant Steele[2] did not state in his affidavit that such concerns motivated his decision to postpone the wedding. Rather, he stated that he was simply applying the prison's visitation policy. We therefore agree with Plaintiff that concerns over Dorothy Jolivet's marital status did not motivate the decision to postpone the December 1 wedding.
 
 
 13
 Nevertheless, we are " 'free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.' " Griess v. Colorado, 841 F.2d 1042, 1047 (10th Cir.1988) (quoting Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir.1987)). As discussed below, grounds exist for affirming the district court's decision.
 
 
 14
 Plaintiff argues that the magistrate judge and court improperly ignored Dorothy Jolivet's affidavit. While it is true that neither the magistrate judge nor the court referred to or indicated acceptance of the affidavit, they did not refer to or indicate acceptance of any affidavit. Rather, the magistrate judge recited the undisputed facts set forth in all the affidavits, and the district court adopted his Report and Recommendation. Many of these facts are included in Dorothy Jolivet's affidavit. Plaintiff has not shown the relevance of other allegations in the affidavit that the magistrate judge did not mention. We will not sift the record to find evidence to support his argument or manufacture his argument for him. Sil-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1513-14 (10th Cir.1990).
 
 
 15
 Turning to the merits, we review the district court's grant of summary judgment de novo, applying the same standards that the district court applied under Fed.R.Civ.P. 56(c). Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). We first determine whether there are any genuine issues of material fact in dispute; if not, we determine whether the substantive law was correctly applied. Id. We view the record in the light most favorable to the nonmoving party. Id.
 
 
 16
 The parties dispute Plaintiff's claim that he requested permission to marry in April 1988, was granted permission, but permission was later withdrawn because prison officials lost his request form. Such a factual dispute would prevent the grant of summary judgment only if the dispute went to a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.
 
 
 17
 The present claim is limited to a request for damages incurred as a result of the cancellation of the December 1, 1988, wedding ceremony. Plaintiff has not alleged that he suffered any damages as a result of the alleged previous cancellation. If evidence of the alleged previous cancellation is intended to show a motive to prevent Plaintiff from marrying, it is irrelevant. Plaintiff claimed that Defendant Bartell informed him that the first application had been lost, and he would have to submit another form. However, Defendant Bartell had nothing to do with the decision to postpone the December 1 wedding. Plaintiff has not alleged that Defendant Steele, who made the decision to postpone the December 1 wedding, had anything to do with the alleged previous cancellation of the wedding. The dispute as to whether the previous cancellation occurred does not go to a genuine issue of material fact and does not preclude the granting of summary judgment. The parties have not identified any other factual disputes.
 
 
 18
 Prisoners retain a right to marry, subject to substantial restrictions as a result of incarceration. Turner v. Safley, 482 U.S. 78, 95 (1987). "[L]egitimate security concerns may require placing reasonable restrictions upon an inmate's right to marry." Id. at 97. In determining whether a restriction is reasonable, the relevant factors are whether there is a valid, rational connection between the regulation and the legitimate government interest put forward to justify it; whether there are alternative means of exercising the right that remain open to inmates; what impact accommodation of the asserted constitutional right will have on guards, other inmates, and the allocation of prison resources generally; and whether there are ready alternatives that fully accommodate the prisoner's rights at de minimis costs to valid penological interests. Id. at 89-91.
 
 
 19
 The district court determined that the visitation policy satisfied the Turner test. First, the prison had concerns about identifying visitors in order to reduce the likelihood that a visitor will commit a crime or some act contrary to prison policy or assist prisoners with escape attempts, and to account for visitors in case of emergencies. Second, the policy does not deprive prisoners of all visitation. Third, eliminating the policy would adversely impact inmates, guards, and prison resources. Finally, there are no easy alternatives.
 
 
 20
 Plaintiff does not challenge the district court's determination that the visitation policy is reasonably related to penological interests of security, and we therefore uphold that determination. Instead he argues that Dorothy Jolivet had always been permitted to visit in the past based on the same identification she presented on December 1, 1988, and Defendants' application of the visitation policy was "reaching for straws" to prevent the marriage. We perceive the issue to be whether the visitation policy, valid on its face, was arbitrarily applied to deprive Plaintiff of his constitutional right to marry.
 
 
 21
 Although a prison regulation itself may not violate the constitution, prison officials cannot invoke the regulation to arbitrarily prohibit protected activities. Esposito v. Leddy, 618 F.Supp. 1362, 1366 (N.D.Ill.1985). However, inconsistent results are not necessarily signs of arbitrariness or irrationality. Thornburgh v. Abbott, 490 U.S. 401, 417 n. 15 (1989).
 
 
 22
 It is undisputed that prison personnel other than the Defendants had permitted Dorothy Jolivet to visit Plaintiff beginning in March 1988, on the basis of the same identification she presented on December 1, 1988. However, it is also undisputed that 1) to have allowed any visitor into the facility based on the identification Dorothy Jolivet presented on December 1, 1988, would have violated the prison policy requiring positive photographic identification prior to a visit, R.I, doc. 37 at 4; 2) Dorothy Jolivet had been visiting with improper identification, R.I, doc. 39 at 2; and 3) Defendant Steele treated Dorothy Jolivet no differently than he would any other visitor who presented improper identification, had never met Dorothy Jolivet prior to December 1, 1988, did not know she visited Plaintiff prior to this date, and had he known she had been visiting with improper identification, would have called it to the attention of Internal Security. R.I, doc. 39 at 2-3.
 
 
 23
 We agree with the magistrate judge that the mere fact the visitation policy was violated by other prison officials on other occasions did not require that the policy be violated on December 1, 1988. The district court properly dismissed Plaintiff's complaint.
 
 
 24
 The judgment of the United States District Court for the District of Utah is AFFIRMED.
 
 
 
 *
 Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 While Defendant Steele's affidavit states that the divorce papers showed Dorothy's married name was Jarrell, R.I, doc. 39 at 3, in light of the remainder of the record which indicates that Jarrell was her maiden name, we deem this to be a typographical error
 
 
 [2]
 Defendant Steele was the only defendant involved in the decision to prevent the December 1 wedding