Steven MARTIN and Tammy Stolka, Plaintiffs–Appellants,

v.

Donald N. SNYDER, Jr., et al., Defendants–Appellees.

No. 02–1135.

United States Court of Appeals, Seventh Circuit.

Argued April 2, 2003.

Decided May 23, 2003.

Rehearing Denied June 12, 2003.

Michael E. Martinez (argued), Bell, Boyd & LLoyd, Chicago, IL, for Plaintiff-Appellant.

John P. Schmidt (argued), Office of Atty. General Civil Appeals Div., Chicago, IL, for Defendant-Appellees.

Before BAUER, EASTERBROOK, and WILLIAMS, Circuit Judges.

EASTERBROOK, Circuit Judge.

Steven Martin has been in Illinois' custody since 1987, when he was convicted of murder. His projected parole date is in December 2004. During summer 2000 Tammy Stolka, Martin's girlfriend, paid him a visit. While the couple embraced and kissed, Martin fondled her buttocks. That led to a disciplinary ticket for abuse of privileges. The prison's adjustment committee concluded that Martin had violated prison rules about sexual contact and prohibited him from receiving visitors for 30 days. Stolka was placed on a restricted list of indefinite duration. In January 2001 Martin and Stolka requested the warden's permission to marry; the request was denied because Stolka was not then allowed to visit Martin. They filed this suit under 42 U.S.C. § 1983, contending that the Director of the Department of Corrections plus the prison's warden and several other officials violated the due process clause of the fourteenth amendment by restricting the couple's ability to see and wed each other.

In December 2001 the district court dismissed the complaint for failure to state a claim on which relief may be granted. See Fed.R.Civ.P. 12(b)(6). The judge concluded that Martin has received all the process due him for restriction of visiting rights and that Stolka has no independent right to visit prisoners, so that she was not entitled to a hearing. See *Mayo v. Lane*, 867 F.2d 374, 376 (7th Cir.1989). Although the court recognized that prisoners have a fundamental right to marry, see *Turner v. Safley*, 482 U.S. 78, 94–100, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), it relied on *Turner*'s observation that prisons may curtail this right for sound penological purposes. 482 U.S. at 89, 107 S.Ct. 2254. Violating a valid prison rule is a good reason to block marriage, the judge held. Shortly after this opinion was released, the warden sent Stolka a letter reinstating her visitation privileges. The restriction had lasted 18 months, and the marriage had been deferred for 12 months. Martin and Stolka soon saw one another again and have since been married.

Because the marriage has occurred and visitation is ongoing, plaintiffs' request for injunctive relief is moot. And what

could be the damages from delay? Martin and Stolka do not have children, so their welfare is not at issue, nor does marriage create a right of procreation from within prison walls or even of contact visitation. See *Gerber v. Hickman*, 291 F.3d 617 (9th Cir.2002) (en banc); *Goodwin v. Turner*, 908 F.2d 1395 (8th Cir.1990). *Turner v. Safley* recognizes a right to a particular legal status, not a right to intimacy or privacy. Marriage may affect eligibility for social welfare programs or health benefits, may reduce (or increase) income taxation on joint income, and may affect inheritance when one spouse dies. But both plaintiffs are alive, and they do not contend that marriage would have reduced their taxes or increased their receipts from third parties. Marriage often has religious or spiritual significance, but plaintiffs do not assert that interest either. Instead, they contend, lack of an earlier ceremony caused them emotional distress. Martin immediately encounters 42 U.S.C. § 1997e(e), which provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." See *Zehner v. Trigg*, 133 F.3d 459 (7th Cir. 1997). Martin does not contend that he has suffered any physical injury. Stolka, however, is unaffected by this statute and may have a claim to at least some compensation. Compare *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), with *Memphis Community School District v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). It is unnecessary to catalog the possibilities, or to decide what effect *Calhoun v. DeTella*, 319 F.3d 936 (7th Cir.2003), may have on Martin's claim, because qualified immunity blocks damages in any event.

█ Defendants have asserted qualified immunity as a basis for affirmance, as they are entitled to do even though the district court did not reach that issue. See *Massachusetts Mutual Life Insurance Co. v. Ludwig*, 426 U.S. 479, 96 S.Ct. 2158, 48 L.Ed.2d 784 (1976). The first step in assessing an immunity defense is determining whether the complaint states a claim. See *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The district court thought not, but we do not share this view. After *Turner*, a complaint based on prisoners' interest in marriage states a claim; a legitimate penological justification for refusing to allow the marriage is a defense that cannot be adjudicated under Rule 12(b)(6). *Turner* itself shows this. The Court looked to the record, not to the allegations of the complaint, and it ruled in the prisoner's favor because the record did not show a penological justification for refusal to allow the marriage in question. A plaintiff may of course plead himself out of court by cinching the defense for his adversary, but this complaint does not do so. Although it alleges that the warden revoked the plaintiffs' visitation privileges on account of rule violations, this need not imply that a marriage would have undermined the prison's ability to enforce its rules. Plaintiffs sought to alter their legal status, which was possible without restoring regular visitation opportunities. Moreover, defendants have never explained why Stolka's right to visit Martin was suspended for longer than Martin's right to receive a visit from Stolka. So the complaint was not enough to support a decision in defendants' favor. Because there is no record, however, we cannot tell whether defendants could establish a penological justification for the delay.

█ Nonetheless, plaintiffs get no further. Though the complaint protests a denial of marriage, we know now that the

warden did not preclude it. He only postponed it. *Turner* does not say that every delay violates the Constitution, and several decisions have held that prisoners may be required to wait for counseling or administrative processing. See, e.g., *Jolivet v. Steele,* 1992 WL 95506, 1992 U.S.App. LEXIS 9993 (10th Cir. Apr. 30, 1992). Restrictions on visitation, though not enough to justify prohibiting marriage, may well justify deferment, so that the sanction for misconduct will have some sting. No case of which we are aware concludes that a year's delay is unconstitutional when the prisoner's misbehavior has led to curtailment of visiting rights. Nor does the lack of authority imply that delay is so clearly forbidden that no one would bother to defend or litigate about the practice. There have been other protests about delay in marriage, and wardens have won all of the appellate decisions we could locate. (The only potentially contrary decision is *Buehl v. Lehman,* 802 F.Supp. 1266, 1271–72 (E.D.Pa.1992), which as the opinion of a trial court not only is of negligible precedential value but also does not reveal the outcome; it holds only that the plaintiff had enough evidence to get past summary judgment.) The district judge in this very suit thought that delay for as long as Stolka's visiting privileges were suspended is lawful. It is very hard to see how it could be deemed clearly established that delay is forbidden, when a federal judge with ample time for legal research has reached the conclusion that delay is constitutional. Qualified immunity thus is appropriate in this case, but in the future district judges should not dismiss similar complaints at the pleading stage.

AFFIRMED

WILLIAMS, Circuit Judge, dissenting.

I respectfully dissent. The panel's conclusion that the defendants are entitled to qualified immunity is based on the characterization of Martin and Stolka's claim as a postponement of their marriage rather than a denial. This is an artificial distinction in a case such as this where, as the majority points out, the plaintiffs were allowed to marry only after their § 1983 suit was filed. A decision by defendants to change their conduct after the plaintiffs file suit does not erase the constitutional violation. Other than a *de minimus* delay reasonably related to penological goals, a denial of the right to marry must be analyzed under the reasonableness inquiry established in *Turner v. Safley,* 482 U.S. 78, 89–92, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Otherwise, once a constitutional violation stops, plaintiffs would have no recourse for a deprivation of their rights. I view this case, therefore, as involving not simply a delay in the right to marry, but a denial.

Left, then, with Martin and Stolka's claim that defendants violated their right to marry, I believe additional fact development is necessary before this court could decide whether defendants are entitled to qualified immunity, particularly in this case where plaintiffs' complaint was filed *pro se.* "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal .... [A]nd when defendants do assert immunity it is essential to consider facts in addition to those in the complaint." *Jacobs v. City of Chicago,* 215 F.3d 758, 775 (7th Cir.2000) (Easterbrook, J., concurring).

Furthermore, I do not believe that Martin's damages claim is precluded by 42 U.S.C. § 1997e(e). In dicta, the majority appears to support the premise that Martin has no possible damages remedy. This analysis seems to be in conflict with this circuit's rule as expressed in *Calhoun v. DeTella,* 319 F.3d 936, 941 (7th Cir.2003), that " § 1997e(e), as the plain language of

the statute would suggest, limits recovery 'for mental and emotional injury,' but leaves unaffected claims for nominal and punitive damages, which seek to remedy a different type of injury." Therefore, I would reverse the decision of the district court and remand for further consideration of both plaintiffs' substantive due process and equal protection claims.