George REED, Plaintiff-Appellant,

v.

Paul S. KEMPER and Michelle Bones, Defendants-Appellees.

No. 16-1068

United States Court of Appeals, Seventh Circuit.

Submitted December 12, 2016 *

Decided December 12, 2016

---

* We have unanimously agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

George Reed, Pro Se

Maura Whelan, Attorney, Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, for Defendants-Appellees

Before MICHAEL S. KANNE, Circuit Judge ANN CLAIRE WILLIAMS, Circuit Judge DAVID F. HAMILTON, Circuit Judge

## ORDER

The warden at the Racine Correctional Institution denied George Reed, an inmate, the right to marry his fiancée. Reed sued the warden, Paul Kemper, and the institution's complaint examiner, Michelle Bones. The district court ordered the defendants to allow him to marry but denied damages on the basis of qualified immunity. We conclude that the complaint examiner is entitled to qualified immunity but that the warden must pay nominal damages. Thus we affirm in part and vacate in part.

Reed is serving a life sentence for murder and sought to marry his fiancée, Jerusha Bohannon, who is not incarcerated. Bohannon is his high-school sweetheart and the mother of his child. Under a Wisconsin state regulation, inmates may apply for a marriage ceremony if they meet certain criteria, including counseling and financial requirements. Once an inmate has submitted the required information, a marriage coordinator reviews the application

and makes a recommendation to the warden. The decision to grant or deny the marriage request rests with the warden.

Reed met all the required criteria, and the marriage coordinator recommended that he be allowed to marry. But Kemper denied Reed's marriage request in a brief written statement to Reed: "Taking into consideration your criminal history, sentence structure, and your unmet program needs, I have determined that there is no justifiable reason for this marriage to take place while at Racine Correctional Institution." Reed contested this decision administratively, and after reviewing his complaint, Bones concluded that Kemper did not violate any rules.

In an affidavit supplied to the district court, Kemper elaborated that he denied the marriage request because he thought that the marriage would not succeed. He gave three reasons for his prediction. The first was based on Reed's criminal history and Reed's attitude about it:

> Criminal history is reviewed and considered because it illustrates the background of this individual.... I consider whether this history will have an impact on the relationship with the proposed wife and family.... For Reed, ... his criminal history ... entails possession with intent to deliver, controlled substance manufacturing/delivery, first-degree homicide and possession of a firearm. These are all very serious felony convictions.... Reed made a statement that he believed he was innocent of the [homicide].... therefore still minimalizing his involvement in the crime. Even more concerning to me was the impact his crime had on others.

The second reason for predicting marital difficulty was Reed's life sentence. He explained:

> Sentence structure is considered to determine what kind of support the inmate may be able to provide to the spouse.... Reed is serving a life sentence. I considered what role Reed could/will play in the life of his proposed spouse if he is incarcerated for the remainder of his life. I questioned whether he could provide for her and support her in times of crisis. I also questioned whether a marriage under these circumstances could be successful. I believed it was irresponsible to approve this marriage for fear it would only create another divorce in the future, which adds additional burden to the spouse, children, society as a whole and Reed himself.

Finally Kemper wrote that "Reed has a history surrounding drugs and at the time of his marriage request, had yet to complete an Alcohol and Other Drug Abuse program." The program was not available at the prison.

Reed moved for summary judgment and won partial relief on his claim that the defendants had violated his constitutional right to marry under *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). *Turner* declared that inmates retain the fundamental right to marry established in cases such as *Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978), and *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). *Turner*, 482 U.S. at 94–99, 107 S.Ct. 2254. While *Turner* recognizes that wardens can restrict this right, the limits must be "reasonably related to legitimate penological objectives." *Id.* at 97, 107 S.Ct. 2254. The district court granted Reed an injunction allowing him to marry. It reasoned that, if the defendants were trying to promote public safety, denying the marriage request was not reasonably related to that goal because the marriage would not endanger anyone.

On the question of damages, the defendants argued that they were entitled to qualified immunity, and the district court agreed. It reasoned that their conduct "d[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). According to the court, no precedent has rejected Kemper's rationale for preventing the marriage.

■ In this court Reed contends that Kemper is not entitled to qualified immunity. He argues that *Turner* clearly establishes that the rationale articulated in Kemper's affidavit is not related to penological objectives. Penological interests include prison security, crime deterrence, rehabilitation, and resource allocation. *See, e.g., Overton v. Bazzetta*, 539 U.S. 126, 133–34, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003) (recognizing interests in security, protecting visitors, crime prevention, and deterring substance use); *Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011) ("[L]egitimate penological interests might include crime deterrence, prisoner rehabilitation, and protecting the safety of prison guards and inmates."); *Martin v. Snyder*, 329 F.3d 919, 921 (7th Cir. 2003) (upholding brief delay on right to marry to resolve a security concern); *Keeney v. Heath*, 57 F.3d 579, 582 (7th Cir. 1995) (upholding rule preventing jail employees from marrying inmates out of security concerns).

Kemper's rationale—that he stopped Reed's marriage to a civilian because it may fail—is clearly insufficient under *Turner* because marital success is not a *penological* interest. Ordinarily, "where the inmate wishes to marry a civilian, the decision to marry (apart from the logistics of the wedding ceremony) is a completely private one." *See Turner*, 482 U.S. at 98,

107 S.Ct. 2254. Kemper may be right that, because Reed is a convicted murderer, past drug abuser, and sentenced to life in prison, Reed's marriage to a civilian faces enormous challenges. But the uncertain success of a marriage is not itself a valid reason for a state official to prevent it. And Bohannon understood Reed's background as part of the requirements leading up to Reed's marriage request, so her consent is fully informed.

Rehabilitation and deterrence are valid penological goals, but Kemper never mentions them as reasons for prohibiting the marriage. We recognize that in his affidavit Kemper asserted that Reed has "yet to complete an Alcohol and Other Drug Abuse program" and that Reed is still "minimalizing" his crime. But these assertions do not imply that stopping the marriage will promote rehabilitation or deterrence. First, Kemper provided no evidence that Reed is *refusing* to participate in a drug-abuse program. To the contrary the program is simply not available to Reed. Second, Kemper never opines that until Reed receives drug treatment or openly declares his role in his crime he will misuse the marriage to exploit or abuse others. Kemper has therefore not connected the denial of Reed's marriage to these valid prison goals. *See Shimer v. Washington*, 100 F.3d 506, 509 (7th Cir. 1996).

■ Although Kemper has not established a basis for qualified immunity from damages, his exposure to damages is limited for another reason. Kemper correctly observes that under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), prisoners asserting only emotional and not physical injury cannot recover compensatory damages; only nominal damages and, if willful and wanton conduct is shown, punitive damages are possible. *Gray v. Hardy*, 826 F.3d 1000, 1007 (7th Cir. 2016) (citing *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th

Cir. 2003)). In moving for summary judgment, and in responding to the defendants' opposition to damages, Reed presented no evidence of physical injury or willful misconduct. Therefore he can recover only nominal damages on remand.

■ Michelle Bones, however, is entitled to qualified immunity because she did not violate clearly established law. Complaint examiners follow the law so long as they do their job in examining complaints in good faith. *See Burks v. Raemisch*, 555 F.3d 592, 595–96 (7th Cir. 2009). Bones declared that she has no authority to grant or deny marriage requests and that she reviewed Kemper's decision only for compliance with the marriage regulation. Bones completed her duties as a complaint examiner in good faith and therefore did not violate the law. *See id.*

■ A final note. The district court denied Reed's requests for counsel because he did not timely show that he had attempted to secure counsel on his own, *see Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). He submitted that evidence only after the court had decided summary judgment. Because his submission came too late, the district court did not abuse its discretion in denying his request. *See id.*

Reed's motion for recruitment of counsel on appeal is DENIED as moot, and the judgment of the district court is AFFIRMED in part, VACATED in part, and REMANDED for an award of nominal damages of one dollar payable by defendant Kemper.